Filed 1/13/15; unmodified opn. attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONY SARUN,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>DIGNITY HEALTH,<br><br>      Defendant and Respondent. | B251767<br><br>(Los Angeles County<br>Super. Ct. No. BC483764)<br><br>ORDER MODIFYING OPINION<br>(No Change in Judgment) |

THE COURT:

It is ordered that the opinion filed December 15, 2014 and certified for publication on January 6, 2015 be modified as follows:

On page 1, change the name Barry R. Strange to Brian R. Strange.

There is no change in the judgment.

_____

      PERLUSS, P. J.           WOODS, J.           SEGAL, J.*

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/15/14; pub. order 1/6/15 (see end of opn.); unmodified version

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONY SARUN, | B251767 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC483764) |
| v. | |
| DIGNITY HEALTH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee Smalley Edmon, Judge.  Reversed and remanded.

Law Offices of Barry L. Kramer, Barry L. Kramer; Strange & Carpenter, Barry R. Strange and Gretchen Carpenter, for Plaintiff and Appellant.

Ogloza Fortney, Darius Ogloza, David Fortney and Brian D. Berry, for Defendant and Respondent.

_____

Tony Sarun was uninsured when he received emergency healthcare services from a hospital owned and operated by Dignity Health.  Upon admission Sarun signed an agreement to pay the hospital's "full charges, unless other discounts apply."  The agreement explained uninsured patients might qualify for government aid programs or financial assistance from Dignity.  After receiving an invoice for $23,487.90, which reflected a $7,871 "uninsured discount," and without applying for any other discount or financial assistance, Sarun filed a putative class action complaint asserting claims including unfair and/or deceptive business practices under Business and Professions Code section 17200 (UCL) and violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.).  The complaint alleged Dignity had failed to disclose uninsured patients would be required to pay several times more than other patients receiving the same services, the charges set forth on the invoice were not readily available or discernable from the agreement, and the invoiced charges exceeded the reasonable value of the services.

The trial court sustained Dignity's demurrer to Sarun's second amended complaint without leave to amend and dismissed the action on the ground Sarun had not adequately alleged "actual injury," and, therefore, lacked standing.  We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Terms of the Admissions Agreement*

According to the allegations of the second amended complaint, Sarun was taken by ambulance to Northridge Hospital Medical Center after a motor vehicle accident.  He was released three to four hours later after receiving various diagnostic tests.

While at the hospital Sarun signed a "Conditions of Admissions and Treatment" agreement, which included terms governing payment for services.  Paragraph 8.b. stated, "Patients who do not have insurance must pay us for the services at our full charges, unless other discounts apply.  However, uninsured patients may be able to qualify for government programs or financial assistance.  Financial assistance may include a discount from the Hospital's full charges, free care, interest free payment plans or other assistance.  Patients seeking government or financial assistance must complete an

3

application (*see Paragraph 9 below*)." "Full charges" was defined as "the Hospital's published rates (called the chargemaster), prior to any discounts or reductions." Paragraph 8.c., "Additional Terms," provided the patient would be responsible for attorney fees and collection expenses if it was necessary to refer the matter for collection. Paragraph 9, "Financial Assistance," explained Dignity could help uninsured patients enroll in government health care programs, and, if the patient did not qualify, might provide financial assistance under its own financial assistance policy. Paragraph 9 reiterated an uninsured patient was required to complete an application and provide certain personal and household financial information to determine eligibility for financial assistance.

Sarun subsequently received a "Balance Due Notice," reflecting total charges of $31,359, an uninsured discount of $7,871.10 and a balance due of $23,487.90. The invoice directed Sarun to make his check payable to Northridge Hospital Medical Center, contained spaces for use of a credit card, and also provided a website address to access, manage or pay his account online. It also invited Sarun to call a customer service representative if he wanted to set up a payment plan.

The invoice further stated, in addition to the uninsured discount, "you may be eligible for other forms of financial assistance such as government sponsored programs" and provided a telephone number for further information. A document included with the invoice described the financial assistance options, provided an application and enumerated the necessary documentation.[1] It provided in part, "If you are unable to supply one of the documents, or there are additional factors that may influence the evaluation, please submit a written statement explaining your situation. [¶] If any of the [required documents] are not included, the application cannot be processed. After all

_____

[1] Required documents included proof of monetary assets—that is, the last three months of statements from checking, savings, credit union and investment account—and proof of income. For example, if employed, the patient was required to provide his or her previous year tax return, as well as copies of paychecks or stubs for the three months prior to treatment.

documents have been received, your application will be reviewed and you will be notified as soon as a decision has been made."

Sarun did not seek any further discount or apply for financial assistance. He did, however, make a partial payment toward the balance due.

2. *The Second Amended Complaint*

After a demurrer to Sarun's first amended complaint was sustained with leave to amend,[2] on January 24, 2013 Sarun filed a second amended class action complaint asserting causes of action for violations of the UCL and CLRA. Sarun alleged Dignity was "charging and seeking to enforce collection of unreasonable, unfair, and grossly inflated prices for emergency care provided to its uninsured patients" and "bills and takes action to force uninsured emergency care patients to pay substantially more than the *reasonable value* of its treatment and services." Sarun averred Dignity's "full charges" were grossly inflated prices, which could not be ascertained from the admissions agreement itself and were several times higher than the reimbursement rates for other patients and more than quadruple the hospital's actual costs.[3] Although Sarun acknowledged in his second amended complaint that "discounts" are an "essential component in the determination of an uninsured's payment liability," the pleading further alleged Sarun "had no intention of paying, or seeking financial aid in order to pay an

---

[2]    Sarun's original and first amended complaints had included causes of action for breach of contract and breach of the covenant of good faith and fair dealing.

[3]    According to the second amended complaint, the phrase "*full charges, unless other discounts apply*" could not be made certain because the several discounts potentially available were "based on numerous factors, complex formulas, prior acceptance or rejection of claims for governmental assistance, a government program eligibility screening process, a patient's income and assets which may be difficult or impossible to quantify and/or verify, and various subjective criteria such as a patient's 'financial need' or the hospitals' discretionary case-by-case determination of specific circumstances . . . ."

5

outlandish bill . . . particularly where he felt that the cost of the services and treatment rendered should have cost, at most, in the area of $3,000."[4]

### 3. *The Trial Court's Order Sustaining Dignity's Demurrer Without Leave To Amend*

Dignity demurred to the second amended complaint on grounds including Sarun lacked standing under the UCL and CLRA because he failed to adequately allege he had suffered an economic injury or, to the extent he had, that it was caused by Dignity's business practices. Dignity argued Sarun had conceded he would be willing to pay approximately $3,000 and, until he applied for financial assistance, it was speculative whether he would be required to pay more than that amount. Dignity further argued Sarun's refusal to seek financial assistance made it impossible to determine whether he was in fact injured and rendered injury, if any, self-inflicted, not traceable to unfair business practices or conduct proscribed by the CLRA.

The trial court sustained Dignity's demurrer without leave to amend, finding Sarun had failed to allege injury in fact: "Even assuming, arguendo, that [Dignity] was required to charge the reasonable value of the services provided, and assuming that the invoice reflected an amount in excess of the reasonable value of those services, [Sarun] does not allege that he has been required to pay any amount in excess of the reasonable value of the medical services provided. . . . The [second amended complaint] notably does not allege that the amount [Sarun] has already paid is unreasonable or in excess of the $3,000 that [Sarun] 'felt' was a reasonable price. Nor does the [second amended complaint] allege that [Sarun's] medical bill has been referred to a collection agency or that [Dignity] has taken other informal steps to coerce payment. [¶] Moreover, the [second amended complaint] does not allege that [Sarun] sought and was denied a discounted rate. . . . Rather than pursuing the remedy presented to him for avoiding the inchoate

---

[4] Notwithstanding Sarun's refusal to request any additional discount or financial assistance and his insistence he was not obligated to do so, the proposed class consisted of uninsured individuals who received emergency care medical treatment at a hospital in California owned by Dignity after May 3, 2008 and "were not given a payment assistance discount under Dignity's Payment Assistance Policy . . . ."

6

injury, the second amended complaint alleges that [Sarun] immediately sought legal counsel."  The trial court did not address the other grounds asserted in Dignity's demurrer.[5]

## DISCUSSION

### 1.  *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  We liberally construe the pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Schifando*, at p. 1081.)

### 2.  *Standing Under the UCL and CLRA*

Unfair competition under the UCL means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  Written in the disjunctive, section 17200 establishes "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent."  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*); accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  The CLRA prohibits specified unfair and deceptive acts and practices in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer."  (Civ. Code, § 1770, subd. (a).)

---

[5]     Dignity had argued the claims failed as a matter of law and it was immune from liability because its discounting policy and price structure were authorized by California law.

"Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages. [Citation.] At the November 2, 2004, General Election, the voters approved Proposition 64, which amended the UCL to provide that a private person has standing to bring a UCL action only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1381 (*Hale*).) Similarly, to have standing under the CLRA, a plaintiff must allege he or she suffered damage as the result of the unlawful practice. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 644-645; Civ. Code, § 1780.)

"'In approving Proposition 64, the voters found and declared that the amendments were necessary to prevent abusive UCL actions by attorneys whose clients had not been "injured in fact" or used the defendant's product or service, and to ensure "that only the California Attorney General and local public officials [are] authorized to file and prosecute actions on behalf of the general public."'" (*Troyk v. Farmers Group, Inc*. (2009) 171 Cal.App.4th 1305, 1345; see *Kwikset Corporation v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*) ["[w]hile the substantive reach of [the UCL] remains expansive, the electorate has materially curtailed the universe of those who may enforce their provisions"].) To satisfy Proposition 64 a plaintiff "must now establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e. *caused by*, the unfair practice or false advertising that is the gravamen of the claim." (*Kwikset*, at p. 322.)

"Injury in fact" as used in Proposition 64 has the same meaning as under federal law: "'[A]n invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" [citations].'" (*Kwikset*, *supra*, 51 Cal.4th at p. 322.) Proposition 64, however, imposes the additional requirement that the plaintiff have lost money or property. (*Ibid.*) Indeed, loss of money or property—that is, "economic injury"— "is itself a classic form of injury in fact." (*Id.* at p. 323; see *id.* at p. 325, fn. 8 ["proof of lost money or property will generally satisfy the element of injury in fact"].) Economic

8

injury may be shown in many ways including a plaintiff "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have"; "hav[ing] a present or future property interest diminished"; and "be[ing] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Id.* at p. 323.)

Although Proposition 64's standing requirement is more restrictive than the federal law requirement because the injury must be economic, "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact . . . . [F]ederal courts have reiterated that injury in fact is not a substantial or insurmountable hurdle; as then Judge Alito put it: 'Injury-in-fact is not Mount Everest.' [Citation.] Rather, it suffices for federal standing purposes to '"allege[] some specific, 'identifiable trifle' of injury."'" (*Kwikset*, *supra*, 51 Cal.4th at p. 324.) "'"The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."'" (*Id.* at p. 325, fn. 7.)

3. *The Second Amended Complaint Adequately Alleges Injury in Fact*

Sarun alleged he received an invoice from Dignity showing a balance due ("total amount you owe") of $23,487.90 that he was obligated to pay under the terms of the Conditions of Admission and Treatment agreement he had signed. Specifically, Paragraph 36 of the second amended complaint alleged, "Plaintiff Sarun has already made a partial payment toward his account, and had a financial liability for the remaining balance of his account." As discussed, the invoice even included instructions as to the proper payee of a check, provided space for payment by credit card and supplied information for payment online. Although Dignity had not begun any collection activity, the existence of an enforceable obligation, without more, ordinarily constitutes actual injury or injury in fact. (See *Hale*, *supra*, 183 Cal.App.4th at pp. 1383-1384; see generally *Adams v. Paul* (1995) 11 Cal.4th 583, 591, fn. 5 ["actual injury . . . may well precede quantifiable financial costs"].)

9

Like Sarun, Dagmar Hale was uninsured when she received emergency hospital care. The admissions agreement she signed provided, "'you hereby individually obligate yourself to pay the account of the hospital in accordance with the regular rates and terms of the hospital.'" (*Hale*, *supra*, 183 Cal.App.4th at p. 1378.) After she had received a bill for more than $14,000 and paid $500 toward it, Hale filed an action asserting claims for violation of the UCL and CLRA alleging the hospital, contrary to its promise to charge "regular rates," had charged uninsured patients exponentially more than the amount it accepted from patients covered by Medicare or private insurance. (*Ibid.*) Although the hospital did not challenge the trial court's finding Hale had adequately alleged injury in fact, the court nevertheless explained the reason it believed Hale had done so: "Even though the SAC alleges Hale has paid only $500 of her $14,447.65 medical bill, it also alleges the Admission Agreement obligates her to pay [the hospital] the balance on her account. Thus, she faces at least an *imminent* invasion or injury to a legally protected interest. [Citation.] The term 'imminent' is defined as 'ready to take place,' 'hanging threateningly over one's head,' and 'menacingly near.' [Citation.] Certainly, this is not the type of action Proposition 64 was intended to squelch. Hale was a bona fide consumer of medical services." (*Id.* at pp. 1383-1384.)

As Dignity argues, *Hale* is distinguishable. Unlike the situation in *Hale*, Dignity expressly gave Sarun the information necessary to apply for a discounted billing rate. The issue, then, is whether Sarun's failure to seek financial assistance, which may have eliminated any further financial obligation to Dignity, vitiated his standing to challenge Dignity's billing practices for uninsured emergency care patients under the UCL and CLRA. The trial court concluded the answer was "yes," based in part on the holding in *Meyer v. Sprint Spectrum, L.P., supra*, 45 Cal.4th 634, that "to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." (*Id.* at p. 641; see also *id.* at p. 643 [no standing under CLRA if the allegedly

unlawful practice "has not resulted in some kind of tangible increased cost or burden to the consumer"].)[6]

We recognize this difference in the billing practices at issue in *Hale* and those in the case at bar. However, although a further discount from Dignity's "full charges"— even a complete elimination of the charges in excess of what Sarun already had paid— may have been available, the invoice as presented to Sarun (which was before the trial court after it granted Dignity's unopposed motion for judicial notice) stated a $23,487.90 balance was due. Sarun was not merely "exposed" to the allegedly unlawful pricing system—that is, a list price expressly subject to negotiation like the sticker price on an automobile on a dealer's lot or a shouted offer at the souk—Dignity's invoice told him to pay the full remaining sum unless he sought relief. Indeed, the form admissions agreement Sarun had signed after arriving by ambulance at the hospital obligated him to pay Dignity's full charges unless other discounts applied, but did not obligate him to apply for such discounts, and further provided he would be liable for attorney fees and collection expenses if the matter was referred for collection. As in *Hale*, upon receipt of this bill Sarun faced at least an imminent invasion of a legally protected interest.

Moreover, the *Meyer* Court, in discussing its earlier decision in *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, also explained that incurring transaction costs to avoid the consequences of a deceptive practice "falls within the broad meaning of suffering 'any damage as a result of the use or employment' of an unlawful practice, whether or not those transaction costs are cognizable as 'actual damages.'" (*Meyer v. Sprint Spectrum, L.P, supra*, 45 Cal.4th at p. 643.) Sarun was faced with just such transaction costs: To avoid the consequences of its allegedly unlawful "full

---

[6]    As the trial court emphatically phrased it, "The [second amended complaint] did not allege that Plaintiff faced an imminent threat of any injury. It merely alleges that Plaintiff received an invoice that he did not pay, that he could have sought to have reduced, and that was not sent to collections. But opening a piece of mail that had no other appreciable impact on Plaintiff's financial, mental, or physical well being is not itself an injury that confers standing under the sweeping provisions of the UCL and CLRA."

charges" pricing structure for uninsured emergency care patients, Dignity required Sarun to apply for financial assistance, including providing tax return information and other personal financial data. The tangible burden of such an application process is far more than the "identifiable trifle" required to confer injury-in-fact standing.

Our conclusion is reinforced by *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758 in which the Supreme Court held retail pharmacies had standing to assert UCL claims against pharmaceutical companies that had allegedly engaged in price fixing even though the retail pharmacies were able to pass on any overcharges to their customers. (*Id.* at p. 788 [pharmacies "lost money: the overcharges they paid"].) The Court rejected the pharmaceutical companies' argument the pharmacies ultimately "suffered no compensable loss because they were able to mitigate fully any injury by passing on the overcharges," explaining "[t]he doctrine of mitigation, where it applies, is a limitation on liability for damages, not a basis for extinguishing standing. [Citation.] This is so because mitigation, while it might diminish a party's recovery, does not diminish the party's interest in proving it is entitled to recovery." (*Id.* at p. 789.) Dignity's argument Sarun was required to apply for financial assistance to perfect his claim (that is, to allege injury in fact) would be akin to requiring Sarun to mitigate his damages as a precondition to suit. As in *Clayworth*, that is unnecessary here.

Although Dignity Health has asserted several other grounds for affirming the trial court's order, primarily arguments addressing the merits of Sarun's claims, those issues are best addressed by the trial court in the first instance.

12

**DISPOSITION**

The judgment is reversed, and the matter remanded for further proceedings not inconsistent with this opinion.  Sarun is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/6/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TONY SARUN, | B251767 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC483764) |
| v. | |
| DIGNITY HEALTH, | ORDER CERTIFYING OPINION FOR PUBLICATION (No Change in Judgment) |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed December 15, 2014 was not certified for publication. The court has read and considered appellant's request for publication and respondent's opposition. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.          WOODS, J.          SEGAL, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14