Filed 9/14/16  Moran v. Prime Healthcare Management CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENE MORAN, | |
| Plaintiff and Appellant, | G051391 |
| v. | (Super. Ct. No. 30-2013-00689394) |
| PRIME HEALTHCARE MANAGEMENT, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

\*            \*            \*

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Reversed.

Law Office of Barry Kramer and Barry L. Kramer; Carpenter Law and Gretchen Carpenter for Plaintiff and Appellant.

Shulman Hodges & Bastian, Ronald S. Hodges, Gary A. Pemberton and Heather B. Dillion for Defendants and Respondents.

\*            \*            \*

A person receiving medical treatment at a hospital's emergency room who pays for it out of pocket can be charged substantially more for that care than one who is covered by a either a government-sponsored program or private insurance. This case concerns whether one can maintain an action challenging this variable pricing practice under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200), the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), or for declaratory relief (Code Civ. Proc., § 1060). While most of the claims asserted by plaintiff Gene Moran lack merit, we conclude he has sufficiently alleged facts supporting a conclusion he has standing to claim the amount of the charges defendants' hospital bills self-pay patients is unconscionable. Therefore, we reverse the trial court's judgment of dismissal in this case.

I

BACKGROUND

On three occasions in October 2013, plaintiff, "a self-pay patient," went to the emergency room of a hospital owned and operated by defendants Prime Healthcare Management, Inc., Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc., and Prime Healthcare Huntington Beach, LLC. Each time, he signed a preprinted Conditions of Admission agreement (Contract) and received medical treatment. Subsequently, plaintiff received bills from the hospital for the treatment provided during the three visits that exceeded $10,000.[1]

In November 2013, plaintiff filed this putative class action against defendants. The initial complaint stated causes of action for breach of contract, breach of

---

[1] The hospital continued to send bills to plaintiff even after he filed this action. But in July 2014, plaintiff received a letter from the hospital stating that after "'administrative review' of [his] account," the account balance had been reduced to "'zero.'" The letter also informed plaintiff the hospital would send him a check to refund his previous payment of $50. At oral argument, defendants made clear they contend plaintiff lacks standing because he never suffered injury in fact or an imminent threat of injury, not that their unilateral action in July 2014 eliminated his standing.

the implied covenant of good faith and fair dealing, violation of the UCL, restitutionary relief under the CLRA, and declaratory relief. Plaintiff subsequently dropped the first and second counts. His first amended complaint also expanded the scope of the CLRA cause of action to include a request for damages by alleging that he complied with the statutory requirement of giving defendants notice of the purportedly unlawful practice and a demand for correction of it. Although verbose, confusing, containing contradictory allegations, and contentions of law, each iteration of the complaint is based on allegations the rates defendants charge self-pay patients are discriminatory, exceed the reasonable value of the treatment, and are "artificially inflated and grossly excessive."

Defendants demurred to the first and the second amended complaints, arguing the counts in each pleading failed to allege facts sufficient to state a cause of action. The trial court sustained both demurrers with leave to amend. Plaintiff filed a third amended complaint (TAC), again stating causes of action for violations of the UCL, CLRA, and declaratory relief.

Attached to the TAC was one of the Contracts plaintiff signed. The Contract contains several paragraphs relevant to a patient's financial obligation for medical treatment and services. However, the TAC primarily focuses on only two of these clauses. Paragraph 16 states in part: "I . . . understand that I am responsible to the hospital and physician(s) for all reasonable charges, listed in the hospital charge description master [2] and if applicable the hospital's charity care and discount payment policies and state and federal law incurred by me and not paid by third party benefits." Paragraph 18 provides: "You may be eligible for the Charity Care and Discounted Payment Program. Please contact the business office." Copies of the hospital's Charity Care and Discounted Payment Policies' Manual and forms are attached to the TAC. The

---

2   Throughout their appellate briefs, the parties refer to the phrase "charge description master" as the Chargemaster rates.

TAC alleges "[n]othing in the Contract requires" a patient apply for financial assistance and mentions several reasons why a person would not want to do so.

Although not mentioned in his prior pleadings, the TAC also alleges that, "before receiving bills . . ., Plaintiff sent correspondence to [the] Hospital," informing it that he "was currently unemployed and uninsured and asking that the hospital 'take into consideration my financial status of being unemployed and not having insurance in addressing the bill,'" and expressing his desire "'to take care of this immediately with what [he had] available right now, not knowing what [his] future monetary situation will be during this recession.'" According to the TAC, the hospital never responded to plaintiff's correspondence.

Defendants demurred to the TAC, again arguing each of its counts failed to state a cause of action. This time, the trial court sustained the demurrer without leave to amend, primarily concluding plaintiff had failed to allege sufficient facts to establish his standing to maintain the action.

II

DISCUSSION

*A. Introduction*

This case involves an appeal from a judgment for defendants entered after the trial court sustained their demurrer to plaintiff's TAC without leave to amend.

Our scope of review is well established. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to

4

constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

The parties' appellate briefs focus on the issue of whether plaintiff had standing to maintain his causes of action alleging violations of the UCL and CLRA. On appeal, "[w]e perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action." (*Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522, 1536.) Thus, "we do not review the validity of the trial court's reasoning," nor are we "bound by the trial court's construction of the complaint, but must make [our] own independent interpretation." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958.)

## B. The UCL

### 1. Background

Plaintiff's first cause of action seeks restitutionary and injunctive relief under the UCL.

The TAC alleges defendants' Contract violates the UCL on several grounds. It alleges the charges billed to self-pay patients seeking emergency care are discriminatory because "self-pay emergency care patients signing" the Contract "reasonably expected and relied on the[] reasonable belief that they would be billed at the same rates as those applicable to other patients signing the same Contract and receiving similar emergency treatment/services." The TAC also asserts self-pay patients "reasonably expected to be billed at rates which reflected no more than the *reasonable value* of the treatment and services," and were "not expecting to be billed at the artificial

5

and grossly excessive rates for which they were subsequently billed."  Another claim is that defendants "fail to inform and/or conceal from . . . self-pay patients" the "uniform policy" of charging them the higher rates.

Business and Professions Code section 17200 declares "unfair competition" includes "any unlawful, unfair or fraudulent business act or practice."  Cases have recognized "the unfair competition law's scope is broad," covering "'"'"anything that can properly be called a business practice and that at the same time is forbidden by law.'"'"'" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)  In addition, "'[b]ecause Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'"  (*Ibid.*)

However, "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair.  Specific legislation may limit the judiciary's power to declare conduct unfair.  If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.  When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."  (*Cel-Tech, supra*, 20 Cal.4th at p. 182.)  Thus, "[i]n any unfair competition case, *Cel-Tech* requires us to engage in a two-step process.  First, we determine whether the Legislature has provided a 'safe harbor' for the defendant's alleged conduct.  If not, we determine whether that conduct is unfair."  (*McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1387; *Cel-Tech*, *supra*, 20 Cal.4th at p. 187.)

A further constraint on UCL actions limits an action by a private party to one who "meets the standing requirements."  (Bus. & Prof. Code, § 17203.)  Thus, to maintain a private enforcement action under the UCL, a plaintiff must be "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  (Bus. & Prof. Code, § 17204.)

## 2. *The Safe Harbor Defense*

Defendants contend plaintiff cannot maintain his UCL cause of action because the hospital's variable pricing regimen has been legislatively endorsed. We conclude this argument has only partial merit.

In *Cel-Tech, supra*, 20 Cal.4th 163, the Supreme Court recognized the safe harbor doctrine, "does not . . . prohibit an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct. There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." (*Id.* at pp. 182-183.)

As for plaintiff's discriminatory pricing claim, we conclude the safe harbor defense applies. Business and Professions Code section 16770, subdivision (f), states "[t]he Legislature . . . finds and declares that the public interest in ensuring that citizens of this state receive high-quality health care coverage in the most efficient and cost-effective manner possible is furthered by permitting negotiations for alternative rate contracts between purchasers or payers of health care services, and institutional and professional providers, or through a person or entity acting for, or on behalf of, a purchaser, payer, or provider." Also Business and Professions Code section 17042, subdivision (c) states, "A differential in price for any article or product as between any customers in different functional classifications" is not prohibited by the Unfair Practices Act. These statutes permit the use of variable pricing. Thus, to the extent plaintiff alleges defendants violated the UCL by discriminatorily charging self-pay patients more than patients covered by government programs or private insurance, his argument fails.

However, as noted above, plaintiff further argues he expected to pay either the same amount for the medical services provided as other patients receiving the same treatment or only the reasonable value of those services, but was billed at what he

7

describes as "artificial and grossly excessive rates." Defendants claim the Hospital Fair Pricing Act (Health & Saf. Code, § 127400 et seq.) defeats this latter allegation.

The Hospital Fair Pricing Act requires licensed hospitals to maintain and administer "an understandable written policy regarding discount payments for financially qualified patients as well as an understandable written charity care policy" and details mandatory requirements for the policy. (Health & Saf. Code, § 127405, subd. (a)(1)(A).) The Act further provides it shall not "be construed to prohibit a hospital from uniformly imposing charges from its established charge schedule or published rates, nor shall this article preclude the recognition of a hospital's established charge schedule or published rates for purposes of applying any payment limit." (Health & Saf. Code, § 127444.) But it also declares "[t]he rights, remedies, and penalties established by this article are cumulative, and shall not supersede the rights, remedies, or penalties established under other laws." (Health & Saf. Code, § 127443.)

Thus, the Hospital Fair Pricing Act imposes on licensed hospitals the requirement that they establish, give notice of, and administer financial aid and charity care policies, and allows a hospital to bill for treatment and services based on its own schedule of fees. However, it does not preclude claims based on what a patient allegedly expected to pay or authorize costs that are allegedly exorbitant. Consequently, the Act neither "'bar[s]' [an] action" under the UCL, nor does it "clearly permit" a hospital to charge self-pay emergency care patients "artificial and grossly excessive rates." (*Cel-Tech*, *supra*, 20 Cal.4th at p. 183.)

### 3. Unlawful Acts or Practices

Plaintiff's UCL cause of action sought recovery on all three grounds listed in Business and Professions Code section 17200. The applicability of each variety of unfair competition is governed by different legal standards. We consider each ground separately.

Under the unlawful prong, "'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' [Citation.] Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554.)

To support the unlawful prong plaintiff alleges, defendants' billing and collection practices "violate[d] the [CLRA] as set forth" in the TAC's second cause of action. The latter count is based on four grounds: 1) "Defendants' acts and practices constitute misrepresentations that the services and/or supplies in question had characteristics uses and/or benefits which they did not have" (Civ. Code, § 1770, subd. (a)(5)); 2) "Defendants' acts and practices constitute misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (Civ. Code, § 1770, subd. (a)(13)); 3) "Defendants represent[ed] that a transaction involves obligations which it does not have or involve, or which are prohibited by law" (Civ. Code, § 1770, subd. (a)(14)); and 4) "Defendants insert[ed] an unconscionable provision into their Contracts" (Civ. Code, § 1770, subd. (a)(19)).

As noted, to support a private action under the UCL, plaintiff needs to allege standing. (Bus. & Prof. Code, § 17204.) "To satisfy the narrower standing requirements imposed by [the enactment of Business and Professions Code section 17204], a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322; *Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1166 (*Sarun*).)

Plaintiff argues he satisfied the standing requirement because "he received a bill from [defendants], paid a portion of that bill, and [until defendants later unilaterally

9

returned his payment and eliminated all charges], remained liable on the balance." This allegation supports plaintiff's claim that he suffered the requisite economic injury required to maintain a private enforcement action under the UCL. "Although [defendants] had not begun any collection activity, the existence of an enforceable obligation, without more, ordinarily constitutes actual injury or injury in fact." (*Sarun v. Dignity Health, supra*, 232 Cal.App.4th at p. 1167; see *Kwikset v. Superior Court, supra*, 51 Cal.4th at p. 325 [recognizing "a monetary payment in response to an unlawful debt collection demand" constitutes economic injury].)

But the first three grounds cited in the TAC supporting the unlawful prong of the UCL cause of action involve allegations of misrepresentation. To satisfy the causation element "under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations," a plaintiff "must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury." (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1355; *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1385 (*Hale*).)

The decision in *Durell* presents an analogous situation. That case also involved a patient lacking health insurance coverage who went to the defendants' hospital emergency room on several occasions, each time signing an admissions agreement that obligated him to pay the "'usual and customary charges for . . . services.'" (*Durell v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at p. 1356.) After being billed for the hospital's full standard rates, Durell sued. In part, he alleged the hospital's disparate billing practices that required uninsured patients to pay its full standard rate for medical care while patients covered by government programs and private insurance paid a lesser amount constituted an unlawful business practice. To support this claim, Durell alleged the defendants' pricing policy violated provisions of CLRA all of which involved making a false or misleading representation.

10

The Court of Appeal affirmed a judgment dismissing the action after sustaining the defendants' demurrer to the second amended complaint. The appellate court held, "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." (*Durell v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at p. 1363.) It cited the California Supreme Court's decision in *In re Tobacco II Cases* (2009) 46 Cal.4th 298, which held Business and Professions Code section 17204's "'as a result of'" requirement "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong" (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 326). Relying on that decision, *Durell* held where "as here, the predicate unlawfulness is misrepresentation and deception[,] . . . the 'concept of reliance' unequivocally applies." (*Durell v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at p. 1363.) Since Durell "d[id] not allege [he] relied on either [the hospital's] Web site representations or on the language in the Agreement for Services in going to [the hospital] or in seeking or accepting services once he was transported there," or that he "ever visited [the hospital's] Web site or even . . . ever read the Agreement for Services" (*ibid.*), his amended complaint failed to state a cause of action under the UCL's unlawful prong. (*Durell v. Sharp Healthcare*, *supra*, at p. 1364.)

In the present case, plaintiff alleged he signed defendants' Contract each time he visited the emergency room. While plaintiff's TAC asserts that he "reasonably expected to be billed and to pay at the same rates as other emergency care patients signing the same Contract and receiving similar emergency care," or would "not be required to pay more than the *reasonable value* of the treatment/services received," plaintiff never alleged that he actually read or relied on the Contracts. Nor does plaintiff allege that he relied on other oral or written representations made by defendants or any of their employees concerning how much he would be charged for the medical treatment provided to him.

11

Plaintiff relies on the related opinion issued by the same appellate court in *Hale v. Sharp Healthcare*, *supra*, 183 Cal.App.4th 1373, to support his argument, plus *Sarun v. Dignity Health, supra*, 232 Cal.App.4th 1159. *Sarun* does not help plaintiff in this context. It did not involve allegations that defendant misrepresented the nature of its medical charges. Rather, *Sarun* addressed whether an uninsured patient who had paid a portion of his bill and remained obligated to pay the balance of it had adequately alleged he suffered damage under the UCL and CLRA even though he failed "to seek financial assistance," under the hospital's discounted billing policy. (*Sarun v. Dignity Health*, *supra*, at p. 1168.)

However, *Hale* is similar to *Durell* and the present case. In *Hale*, the plaintiff was admitted to the defendants' hospital after signing an admission agreement obligating her "'to pay . . . the hospital in accordance with [its] regular rates and terms.'" (*Hale v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at pp. 1377-1378.) The appellate court reversed a judgment dismissing the action as to Hale's UCL and CLRA causes of action. Citing the amended complaint's allegation that "Hale signed the Admission Agreement, and 'at the time of signing the contract, she was *expecting* to be charged "regular rates,"'" the appellate court concluded, "'to the extent [she] is bringing a fraud-based claim under the UCL, she has reasonably pled reliance.'" (*Hale v. Sharp Healthcare*, *supra*, at p. 1385.) In reaching this conclusion, *Hale* rejected the defendants' assertion Hale "would not have seen the Admission Agreement until after she arrived at the hospital" noting "[i]t is possible, however, for a person who has arrived at the hospital to rely on the Admission Agreement in deciding whether to proceed with treatment." (*Id.* at p. 1386.)

Plaintiff's TAC also alleges his expectations concerning payment for the emergency medical services provided to him. But we conclude *Hale* is distinguishable from this case and, in any event, plaintiff's allegations concerning what he expected to pay for defendants' medical treatment are contradicted by the agreements he signed.

12

First, in *Hale* the language of the hospital's admissions contract at issue in *Hale* referred to payment at "regular rates." (*Hale v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at p. 1378.) The plaintiff challenged the hospital's billing on the ground that rather than the "'"regular rates"'" she was expecting to pay, the hospital sent a bill for "'grossly excessive rates.'" (*Id.* at p. 1385.) Plaintiff signed admission agreements obligating him to pay "all reasonable charges, listed in the hospital charge description master and if applicable" defendants' "charity care and discount payment policies" or "state and federal law incurred by me and not paid by third party benefits." It is not clear whether the phrase "all reasonable charges" refers to the fairness of the cost of the treatment or to the scope of that treatment. But even assuming it is the former, this paragraph is not consistent with plaintiff's allegation that he "reasonably expected . . . that [he] would be billed at [either] the same rates as those applicable to other patients signing the same Contract and receiving similar emergency treatment" or "at rates which reflected no more than the *reasonable value* of the treatment."

First, even assuming plaintiff actually read the Contract, he cannot prevail on a theory that he expected to pay the same amount as other patients covered by government programs or private insurance. As noted, plaintiff attached a copy of one of the Contracts to the TAC and relied on the terms of the agreement to support his expectation theories. "While the 'allegations [of a complaint] must be accepted as true for purposes of demurrer,' the 'facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence.'" (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767; *Alphonzo E. Bell Corp. v. Bell etc. Synd.* (1941) 46 Cal.App.2d 684, 691 ["conclusions of the pleader . . . contrary to the express terms of [an] instrument . . . made a part of the complaint" are treated "as surplusage"].)

In this case, plaintiff bases his claims for relief on the terms of an express contract. When interpreting a contract, a court must consider the "clear and explicit"

13

"language of a contract" (Civ. Code, § 1638), generally construing "[t]he words . . . in their ordinary and popular sense . . . unless used by the parties in a technical sense" (Civ. Code, § 1644), and taking "[t]he whole of [the] contract . . . together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" (Civ. Code, § 1641).

Plaintiff's assertion that he expected to pay no more than patients covered by government programs or private insurance is contradicted by the language of the Contracts he signed. The agreements included paragraphs requiring an insured patient to "irrevocably assign[]" his or her "insurance benefits" for the services and treatment rendered by the hospital and hospital-based physicians, and advised an insured patient that he or she will "personally responsible for payment of . . . charges" if the "insurance does not cover" them. Another paragraph informed Medicare-eligible patients that some procedures "may not be covered" and authorized the hospital to "release certain medical information about the patient to the Social Security Administration . . . for this or a related Medicare claim."

Paragraph 16 itself also conflicts with plaintiff's interpretation of the Contract. It states a patient is obligated to pay "all reasonable charges, listed in the hospital charge description master and if applicable the hospital's charity care and discount payment policies and state and federal law incurred by me and not paid by third party benefits." The latter clause modifies the phrase "all reasonable charges," reflecting patients covered by government programs, or receiving "third party benefits," or who are eligible for either the hospital's charity care or discount programs would differ from the amounts "listed in the hospital charge description master."

Second, as for plaintiff's reasonable value claim, in the case of an express contract reasonable value applies only when the agreement "does not determine the amount of consideration, nor [provide] the method by which it is to be ascertained." (Civ. Code, § 1611.) "[I]t is well settled that there is no equitable basis for an implied-in-

14

law promise to pay reasonable value when the parties have an actual agreement covering compensation." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419.) The actual amount plaintiff would be obligated to pay for the hospital's medical treatment is not listed in the Contract. But the agreements provided a means by which a patient can ascertain the amount due for the treatment and services reasonably provided. Because this case involves an express contract containing a means of determining what plaintiff would have to pay for his medical care, his reliance on the reasonable value discussion in *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, lacks merit. That case concerned reimbursement for services during a 10-month period when the parties *did not have* a contractual relationship. Thus, plaintiff's reliance on a reasonable value theory lacks merit.

Finally, we note the TAC acknowledges plaintiff did not have a reasonable expectation that he would pay no more than other patients. Paragraph 34 of the TAC alleges "[p]atients covered by insurance, including governmental and private insurance . . . reimburse Defendants based on governmentally regulated or privately negotiated rate structures rather than Chargemaster rates." The TAC further states, "Defendants' Chargemaster rates are not amounts which Defendants expect to be paid by any category of patient."

Thus, to the extent plaintiff relies on purported violations of the CLRA premised on misrepresentation, his claim that defendants' business practice is unlawful fails because he does not allege facts supporting a finding he actually relied on or could reasonably rely on any misrepresentation in seeking medical treatment at defendants' hospital.

The remaining basis cited by plaintiff for the "unlawful" prong of his UCL cause of action is that the Contract's financial liability provision is unconscionable. The TAC alleged in part, plaintiff was "not expecting to be billed at the artificial and grossly

15

excessive rates for which [he was] subsequently billed." To support this assertion, the TAC stated defendants' charges for medical treatment "are not tethered to their actual costs," but are "four to six times" those costs "and far beyond any reasonable profit margin." Further, it is claimed defendants' charges are intended "to boost hospital reimbursement rates, as well as reflect a higher level of Charity contribution and Financial Assistance given to the local community." Thus, "Defendants' pricing, billing and collection practices have a significant detrimental impact on the large population of self-pay emergency care patients."

"'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""'overly harsh'"" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"'" [citations], or "unfairly one-sided." All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."'" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910-911.) A claim of contractual unconscionability, ""'has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'"" (*Id.* at p. 910.) ""'The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'"'" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133.) ""'Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.'"" (*Ibid.*)

The Contracts plaintiff signed were preprinted documents and the TAC alleged all emergency room patients must sign the same document before being treated. These averments support a finding of procedural unconscionability.

16

As for substantive unconscionability, the price term of a contract can be the basis for relief.  (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 926; *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1323.)  But "[a]llegations that the price exceeds cost or fair value, standing alone, do not state a cause of action." (*Perdue v. Crocker National Bank*, *supra*, 38 Cal.3d at p. 926.)  "The courts look to the basis and justification for the price [citation], including 'the price actually being paid by . . . other similarly situated consumers in a similar transaction.'"  (*Id.* at pp. 926-927.)  In addition, "courts consider not only the market price, but also the cost of the goods or services to the seller [citations], the inconvenience imposed on the seller [citation], and the true value of the product or service."  (*Id.* at p. 927; *Morris v. Redwood Empire Bancorp*, *supra*, 128 Cal.App.4th at p. 1323.)

This case concerns the cost of medical care provided to uninsured patients visiting a defendants' hospital emergency room.  Plaintiff has alleged that defendants' charge description master rates not only far exceed the actual cost of care and provide for a large profit margin, he further maintains the purpose of defendants' charging excessive costs to self-pay patients is to increase the hospital's reimbursement for medical care by dramatically increasing its profit margin for treatment to persons particularly vulnerable because they are in need of emergency medical care.  Generally, "[u]nconscionability is a question of law for the court," but "factual issues may bear on that question."  (*Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 480; *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.)  Also, the Legislature has mandated that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  (Civ. Code, § 1670.5, subd. (b).)

17

To the extent plaintiff alleges the financial liability provision of defendants' Contract is unconscionable, we conclude he has sufficiently stated a cause of action under the unlawful prong of the UCL.

### 4. *Fraudulent Acts or Practices*

The TAC enumerates several grounds supporting the fraud prong of plaintiff's UCL cause of action. It alleges defendants "fail[ed] to inform and/or conceal[ed] from . . . self-pay patients" their "uniform policy to bill and require payment from self-pay patients at rates . . . higher than rates paid by other patients signing the same [c]ontract." Other claims are the Contract "misrepresent[ed] . . . the[] 'charge description master' rates constitute 'reasonable charges,'" and "attending physician(s) . . . list their charges in the Hospital's charge description master," and that the Contract "contains confusing, conflicting, and unintelligible provisions." As for the Contract's financial aid provision, the TAC avers it "requires an uninsured patient, as a prerequisite to challenging the amount of a . . . bill, to first apply for Charity and Financial Aid programs," obligates "an uninsured patient . . . provide total strangers with extensive personal and financial information . . . as a prerequisite for challenging a bill," but "nevertheless compute[s] and send[s] out bills . . . to such patients at the Hospital's [charge description master] rates." Finally, the TAC maintains defendants "bill uninsured patients at [charge description master] rates, when the[] . . . [c]ontract does not permit billing at such rates," and "seek to collect from uninsured patients billed charges that are so excessive and unreasonable as to be unconscionable."

Many of the alleged bases for plaintiff's fraud theory do not involve conduct that is likely to deceive a consumer or contradict the language of the Contracts he signed. Also, as discussed above, the UCL's fraud prong generally "'require[s] . . . a showing that members of the public are likely to be deceived.'" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 81.) To establish a private party's

18

standing to maintain a UCL cause of action under the fraud prong *In re Tobacco II Cases*, *supra*, 46 Cal.4th 298, held the phrase "as a result of" appearing in Business and Professions Code section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 326.) Given our prior discussion of this issue, no basis exists to conclude plaintiff's complaint supports recovery under the UCL's fraud prong.

### 5. *Unfair Acts or Practices*

To support his claim under the "unfair" prong of the UCL, plaintiff alleges defendants "fail[ed] to charge [self-pay emergency room patients] *reasonable rates* as required by the terms of the[] Contract[], and instead interpret[ed] the[] Contracts to collect exorbitant amounts . . . expressly prohibited under the federal tax code, and in violation of the [CLRA]," and which "offend established public policies, . . . are immoral, unethical, oppressive, and unscrupulous."[3]

Cases have employed three different criterion to determine whether a business practice is "unfair" under the UCL. One states ""an 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"" (*Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 81.) A second rule provides ""the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."" (*Ibid*.) A third holds "'[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any

---

[3]      The TAC's reference to an alleged violation of the Internal Revenue Code is confusing. The paragraph in the UCL count alleging defendants engaged in an unfair business practice does not cite to any specific section of the Internal Revenue Code. However, in another paragraph the TAC mentions title 26 United States Code section 501(r)(5)(A) and (B). But in a footnote the TAC states it "is not asserting any private right of action under" this statute.

19

countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided.'" (*Berryman v. Merit Property Management, Inc.*, *supra*, 152 Cal.App.4th at p. 1555.)

The TAC appears to rely on both the first and second approaches to support a claim under the UCL's unfair prong. In any event, it is not necessary to resolve the appropriate standard under the unfair prong. As discussed above, plaintiff has alleged sufficient facts to maintain his UCL cause of action on the basis defendants' billing the full amount to self-pay patients is unconscionable.

Defendants respond, arguing plaintiff lacked standing under this prong because the Contracts offered plaintiff a means to avoid paying the full cost of his care by seeking a reduction or elimination of his financial liability through the hospital's financial assistance or charity care policy. As noted, the Hospital Fair Pricing Act required defendants' hospital to maintain and administer that policy. And, as acknowledged in the TAC, the Contracts informed a patient of the policy.

Contrary to defendants' argument, the availability of its financial assistance and charity care policy did not eliminate plaintiff's standing to maintain this action. In *Sarun v. Dignity Health*, *supra*, 232 Cal.App.4th 1159, the court rejected a similar claim. "[A]lthough a further discount from Dignity's 'full charges'—even a complete elimination of the charges in excess of what Sarun already had paid—may have been available, the invoice as presented to Sarun . . . stated a $23,487.90 balance was due. Sarun was not merely 'exposed' to the allegedly unlawful pricing system . . . Dignity's invoice told him to pay the full remaining sum unless he sought relief." (*Id.* at pp. 1168-1169.) The appellate court further concluded "[t]o avoid the consequences of its allegedly unlawful 'full charges' pricing structure for uninsured emergency care patients, Dignity required Sarun to apply for financial assistance, including providing tax return information and other personal financial data. The tangible burden of such an application

20

process is far more than the 'identifiable trifle' required to confer injury in fact standing." (*Id.* at p. 1169.)

Plaintiff alleged defendants sent him a bill demanding that he pay $10,000 for the medical care he received. While the Contracts advised plaintiff to contact the hospital's business office to see if he could qualify for a reduction or elimination of the amount owed, as *Sarun* concluded this application process also constituted a tangible burden. Thus, we conclude plaintiff had standing under the unfair prong.

Furthermore, we note the TAC contains an allegation that plaintiff sent the hospital "correspondence" informing it of his financial condition and seeking a quick resolution of the charge for his medical treatment, to which the hospital purportedly never responded. Assuming there is evidence to support this allegation, notwithstanding the TAC's allegation that there are reasons why some self-pay patients may not want to seek financial assistance, plaintiff has alleged a basis for finding he substantially complied with the duty to seek financial assistance before suing defendants.

Thus, plaintiff has established a basis for maintaining his UCL cause of action on the basis defendants' policy of billing self-pay patients the full amount of its charge description master rates was unfair because the amount sought was allegedly unconscionable.

*C. The CLRA*

Civil Code section 1780, subdivision (a) authorizes "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action" for relief. As noted above, plaintiff cites subdivision (a)(5), (13), (14), and (19) of the latter statute in support of his CLRA cause of action. In addition, plaintiff repeats the allegation he "reasonably expected and relied on the[] . . . belief that Defendants would bill [him] at the same rates as other patients signing the same Contract and receiving similar

21

emergency treatment/services," or that his bill would be "for no more than the *reasonable value* of the treatment," and he "was certainly not expecting to be billed at the artificial and grossly excessive rates for which he was subsequently billed."

For the reasons previously discussed, we conclude the trial court properly sustained the demurrer as to the allegations of misrepresentation. Because plaintiff failed to allege he read and relied on the signed Contracts or other representation by defendants, he lacks standing to maintain the CLRA cause of action on this basis. "Under Civil Code section 1780, subdivision (a), CLRA actions may be brought 'only by a consumer "who suffers any damage *as a result of the use or employment*" of a proscribed method, act, or practice. (Italics added.) "This language does not create an automatic award of statutory damages upon proof of an unlawful act. Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." [Citation.] Accordingly, "plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm."' [Citation.] A 'misrepresentation is material for a plaintiff only if there is reliance—that is, ""without the misrepresentation, the plaintiff would not have acted as he did"" . . . .' [Citation.]" (*Durell v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at pp. 1366-1367; *Hale v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at pp. 1386-1387.) Further, even if plaintiff did read the Contracts, as explained above, his interpretation of them is contrary to both the language of the instruments and the applicable law.

However, as to the allegation of Civil Code section 1770, subdivision (a)(19), declaring unlawful "[i]nserting an unconscionable provision in [a] contract," based on the foregoing discussion under the UCL's unlawful prong, we conclude plaintiff has stated a basis for maintaining the CLRA cause of action on this ground.

22

*D. Declaratory Relief*

The TAC's third count sought declaratory relief under Code of Civil Procedure section 1060. It requested the trial court decree: (1) "Defendants' billing practices as they relate to [self-pay patients] are unfair, unreasonable, and illegal"; (2) self-pay patients "are liable to Defendants for no more than the *reasonable value* of the treatment/services provided"; and (3) "neither provision 18 of the Contract nor any . . . law or statute establishes a duty on the part of an uninsured patient to seek out and apply for Charity or Financial Aid as a prerequisite to legally challenging the amount of a Hospital bill that the patient deems to be unfair, unreasonable, or unlawful." On appeal, plaintiff's argument addresses only the second and third grounds.

Code of Civil Procedure section 1060 allows "[a]ny person interested under a written instrument, . . . or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." However, Code of Civil Procedure section 1061 states "[t]he court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."

As discussed above, we have rejected plaintiff's claim the Contract can be reasonably construed as limiting defendants' recovery from self-pay emergency care patients to the reasonable value of the services provided. Nor does the third ground for declaratory relief appear to be a matter currently in dispute. While defendants assert plaintiff is not entitled to relief because he never sought financial assistance, they do not take the position that a patient must first seek financial aid before challenging the amount of a hospital bill.

23

That leaves only the TAC's first ground as a basis for declaratory relief. """"The purpose of a declaratory judgment is to 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation."' [Citation.] "Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation [citation]." [Citation.]' [Citation.] '"One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights."'" (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.) Since plaintiff in part seeks injunctive relief to prohibit defendants from future attempts to collect unconscionable amounts for his medical care, we conclude this issue is ripe for declaratory relief.

III

DISPOSITION

The judgment is reversed and the matter remanded to the superior court for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

24