Filed 7/19/22  Sarun v. Dignity Health CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| TONY SARUN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DIGNITY HEALTH, <br><br> Defendant and Respondent. | B311909 <br><br> (Los Angeles County <br> Super. Ct. No. BC483764) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Carpenter Law, Gretchen Carpenter; Law Office of Barry Kramer and Barry L. Kramer for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Barry S. Landsberg, Harvey L. Rochman, Joanna S. McCallum and Craig S. Rutenberg for Defendant and Respondent.

———————————————

Dignity Health's conditions of admission agreement, presented to patients after they receive emergency care at one of its hospitals, provided an uninsured individual must pay the hospital's "full charges, unless other discounts apply." "Full charges" was defined as "the Hospital's published rates (called the chargemaster) prior to any discounts or reductions."[1] The admissions agreement explained uninsured patients might qualify for government aid programs or financial assistance from Dignity Health.

Following emergency treatment at Northridge Hospital Medical Center (Northridge Hospital), owned and operated by Dignity Health, Tony Sarun received an invoice for $23,487.90, which reflected a chargemaster rate of $31,359 reduced by a $7,871.10 "uninsured discount." Sarun filed a putative class action lawsuit against Dignity Health, alleging claims for unfair and/or deceptive business practices under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200) and Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), and seeking declarations that Dignity Health's billing practices are unconscionable and, because the prices to be charged are not adequately disclosed or readily available to uninsured individuals who receive emergency care at a Dignity

---

[1] Health and Safety Code section 1339.51, subdivision (b)(1), defines "charge description master," commonly referred to as a chargemaster, as "a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type." A hospital is "not prohibit[ed]" from using its chargemaster for billing purposes (see Health & Saf. Code, § 127444) and is authorized to negotiate and charge alternative rates (see Bus. & Prof. Code, § 16770, subd. (f)).

2

Health hospital (that is, the prices are unfixed or indeterminable), the admissions agreement contains an "open price" term within the meaning of Civil Code section 1611 (section 1611), so that self-pay patients are liable only for the reasonable value of the services provided.

After it certified a class limited to the request for a declaration the admissions agreement contains an open price term, as instructed by this court in *Sarun v. Dignity Health* (2019) 41 Cal.App.5th 1119 (*Sarun II*), the trial court granted Dignity Health's motion for summary adjudication and denied Sarun's cross-motion for summary adjudication as to that cause of action (the only class claim), finding section 1611 did not apply because the admissions agreement disclosed "the method by which [the price] is to be ascertained." We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Sarun's Emergency Treatment and the Hospital's Admissions Agreement and Billing Statements*

Sarun, who was uninsured at the time, was taken by ambulance to the emergency room at Northridge Hospital following a motor vehicle accident. He was released three to four hours later after being examined and receiving various diagnostic tests.

While at the hospital Sarun signed a standard form "Conditions of Admissions and Treatment," which included terms governing payment for services. Paragraph 8(b) of the admissions agreement stated, "Patients who do not have insurance must pay us for the services at our full charges, unless other discounts apply. However, uninsured patients may be able to qualify for government programs or financial assistance. Financial assistance may include a discount from the Hospital's

3

full charges, free care, interest free payment plans or other assistance.  Patients seeking government or financial assistance must complete an application."  The term "full charges" was defined at the beginning of the agreement as "the Hospital's published rates (called the chargemaster), prior to any discounts or reductions."  Paragraph 9, "Financial Assistance," explained the hospital could help uninsured patients enroll in government health care programs and, if the patient did not qualify, might provide financial assistance under its own financial assistance policy.

Shortly after his treatment Sarun received a "Balance Due Notice" reflecting total charges of $31,359, the chargemaster rate; an uninsured discount of $7,871.10; and a balance due of $23,487.90.  The notice stated, "Only patients seen for eligible hospital services as set forth in Dignity Health's Uninsured Discount Policy, with an annual household income that does not exceed $250,000, who are uninsured and who agree to assign all benefits relating to this claim to Dignity Health, are entitled to the Uninsured Discount."  The notice also stated, in addition to the uninsured discount, "you may be eligible for other forms of financial assistance such as government sponsored programs" and provided a telephone number for further information.  A document included with the notice described the financial assistance options, provided an application and enumerated the necessary documentation.  Several days later a second balance due notice was issued, which indicated an additional 25 percent

4

discount would be applied if Sarun paid the total amount due within 30 days, reducing the outstanding balance to $15,648.15.[2]

2. *Sarun's Lawsuit*

Without applying for any other discount or financial assistance, Sarun filed a putative class action complaint in May 2012 asserting claims under the UCL and CLRA and seeking declaratory relief based on allegations the charges set forth on the invoices were not readily available or discernable from the admissions agreement and the invoiced charges exceeded the reasonable value of the services.

The trial court sustained Dignity Health's demurrer to Sarun's second amended complaint without leave to amend and dismissed the action on the ground Sarun had not adequately alleged "actual injury" and, therefore, lacked standing. We reversed and remanded the case for further proceedings. (*Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1170.)

Sarun's third amended complaint again alleged causes of action under the UCL and CLRA and sought declarations on behalf of members of a state-wide putative class[3] that Dignity

---

[2]    Additional invoices sent to Sarun further reduced the balance due to just over $4,000 based on Dignity Health's patient payment assistance policy and financial information Sarun provided in his deposition testimony. (*Sarun II*, *supra*, 41 Cal.App.5th at p. 1124, fn. 5.)

[3]    The third amended complaint defined the class, with limited exclusions, as "[a]ll individuals (or their guardians or representatives) who, on or after May 3, 2008, (a) received emergency care medical treatment at a Dignity hospital in California; (b) were not covered by commercial insurance or governmental healthcare programs at the time of treatment; and

5

Health's billing practices are "unfair, unconscionable, and/or unreasonable" and that Dignity Health's admissions agreement "contains an 'open price' term with respect to self-pay emergency care patients and thus [they] are liable to [Dignity Health] for no more than the reasonable value of the treatment/services provided."

The trial court denied Sarun's motion for class certification of the declaratory relief cause of action. We reversed in part, directing the trial court to certify a modified issue class with respect to Sarun's open price term claim as it related to uninsured individuals who received emergency care at Northridge Hospital and who signed (personally or through an authorized agent) the admissions contract and were thereafter directly billed for that treatment at chargemaster rates or chargemaster rates less the uninsured discount. (*Sarun II*, *supra*, 41 Cal.App.5th at p. 1123.) The trial court certified the issue class in July 2020, specifically noting, "The Class is limited to the issue of whether the admissions contract contains an open price term."

3. *The Cross-motions for Summary Adjudication*

Section 1611 provides, "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth." Section 1611 describes what is commonly referred to as

---

(c) were not given a payment assistance discount under Dignity's Payment Assistance Policy." (*Sarun II*, *supra*, 41 Cal.App.5th at p. 1126.)

an "open price term."  (See, e.g., *Sarun II*, *supra*, 41 Cal.App.5th at p. 1123.)

Following discovery, Dignity Health moved for summary adjudication on the class claim for declaratory relief, contending Northridge Hospital's admissions agreement does not contain an open price term within the meaning of section 1611.  To the contrary, it argued, the admissions agreement specifies on its face the method by which the amount of the consideration (the charges to be paid by the patient) will be ascertained for uninsured patients—a published price list (the chargemaster) subject to discounts.

Sarun opposed Dignity Health's motion and filed a cross-motion for summary adjudication on the open price term claim. Sarun argued Northridge Hospital's admissions agreement contained an open price term within the meaning of section 1611 because the term "full charges" was not clearly defined; the agreement did not effectively incorporate by reference the chargemaster schedule; and the qualifying language, "unless other discounts apply," did not identify or explain the discounts and thus left uncertain the charges that would be assessed. "Indeed," Sarun asserted, "the Uninsured Discount provided to Plaintiff was not even mentioned in the Financial Agreement or anywhere else in the Contract, nor was the 'Prompt Pay' discount subsequently 'offered' to Plaintiff mentioned in the Contract.  The 'discount' term is particularly problematic, since there are several different, and completely unknown, potential discounts that could be applied by Dignity, based on numerous factors, complex formulas, a patient's income and assets (which may be difficult or impossible to quantify and/or verify), and various subjective criteria such as a patient's 'financial need' or the Hospital's

7

discretionary case-by-case determination of specific circumstances."

At the hearing on the motions, after stating she disagreed with much of the court's detailed tentative ruling rejecting each point Sarun had advanced to establish the admissions agreement contained an open price term, Sarun's counsel did not challenge the court's analysis, arguing only that the failure to disclose that the bill of every uninsured patient would automatically be reduced by an uninsured patient discount of 25 percent meant the price term in the agreement was open. A patient, she explained, had no way of knowing from the admissions agreement whether Dignity Health had an uninsured patient discount or, if it did, how much it was. Unlike the hospital in *Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131 (*Moran*), extensively cited by the court in its tentative ruling, which had no uninsured patient discount, counsel continued, "A patient can't look at the chargemaster and determine how much they're going to pay because that is not the amount that is billed to uninsured patients." Dignity Health briefly responded, noting application of a nondiscretionary discount did not change the objectively determinable nature of the price, even if that discount was not disclosed in the agreement.[4] "In fact," counsel explained, "the uninsured discount policy is in the record in this case. [T]ake the chargemaster, subtract the nondiscretionary uninsured discount and arrive at the price."

---

[4] Dignity Health's counsel stated he was not agreeing the uninsured patient discount applied to all uninsured patients, but was responding to the argument as articulated by Sarun's counsel.

At the conclusion of the hearing the court requested supplemental briefing on whether the evidence in the record was sufficient to rule the language in the admissions agreement was the same for all class members. Dignity Health did not request an opportunity to also submit further briefing on Sarun's argument concerning the uninsured patient discount.

4. *The Order Granting Dignity Health's Motion and Denying Sarun's Motion for Summary Adjudication*

In an order filed March 8, 2021 the trial court granted Dignity Health's motion and denied Sarun's.[5] The court stated it found instructive the decision in *Moran*, *supra*, 3 Cal.App.5th 1131, which rejected a similar claim that section 1611 applied to a contract signed after the patient received emergency medical services. In one paragraph of that contract the patient had affirmed he was responsible "for all reasonable charges, listed in the hospital charge description master and if applicable the hospital's charity care and discount payment policies and state and federal law" and in a separate paragraph that he may be eligible for the hospital's charity care and discounted payment program. (*Id*. at p. 1138, fn. omitted.) The court of appeal held there was no open price term: "The actual amount plaintiff would be obligated to pay for the hospital's medical treatment is not listed in the Contract. But the agreements provided a means by which a patient can ascertain the amount due for the treatment and services reasonably provided." (*Id*. at p. 1146.)

---

[5] Following receipt of the supplemental briefing and as part of the March 8, 2021 ruling granting Dignity Health's motion, the court found the undisputed evidence demonstrated the admissions agreement was common to all class members. Neither party challenges that ruling on appeal.

The trial court found no basis for distinguishing the reasoning and holding of *Moran*, disagreeing with Sarun's contention the reference to the published chargemaster schedule was significantly clearer in the contract at issue in that case. In particular, the court rejected Sarun's contention that, because the admissions agreement defined "Full charges" using a capital "F," while the financial liability provision referred to "full charges" with a lower case "f," Dignity Health's reference to the chargemaster schedule was unclear, and its reliance on it ineffective.[6] Similarly, the court ruled it did not matter whether the chargemaster schedule had been properly incorporated by reference into the admissions agreement; section 1611 only requires identification of an "objective measure" for determining the contract price, not that the measure be made part of the agreement itself.

Finally, the court ruled the clause reducing Sarun's liability for chargemaster rates if "other discounts apply" did not make the price term open under section 1611: "The relevant provisions of the Agreement indisputably provided an objective method for determining Plaintiff's maximum liability for the services received. . . . [T]o the extent any discounts are mandated by law, then those discounts can be determined objectively. On

---

[6] The trial court explained the use of capitalization in the admissions agreement "comport[ed] with ordinary rules of grammar and style" and "no reasonable patient would be confused by the language and format of the Agreement." In any event, the court continued, "'risk of confusion,'" even if it existed, was not pertinent to a determination whether section 1611 applied to the admissions agreement, whatever relevance it might have on the issue of unconscionability.

10

the other hand, any discretionary discounts would amount to little more than Defendant's after-the-fact relinquishment of part of its right to receive payments from Plaintiff. Such scenarios are not within the contemplation of Civil Code section 1611's prohibition."

Although his individual claim of unconscionability remained pending in the trial court, Sarun filed a notice of appeal, which stated, "The Order is appealable under the 'death knell' doctrine. *See Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1386, n. 2."

## DISCUSSION

1. *Preliminary Issues: Appealability and Forfeiture*

    a. *The March 8, 2021 order is appealable under the death knell doctrine*

"Under the one final judgment rule, "'an appeal may be taken only from the final judgment in an entire action.'"" (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.) However, the Supreme Court has explained the "death knell doctrine" is an exception to this rule when the trial court has entered an order in a class action "that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*Id.* at p. 759.) "[T]he doctrine's application depend[s] on the contrast between the continuing viability of individual claims and the terminated status of absent class member claims: '[A]n appeal is allowed because the action has in fact and law come to an end, as far as the members of the alleged class are concerned. Since, in theory, the individual plaintiff's action can go forward, the death knell doctrine fits comfortably into the exception to the "one final

11

judgment" rule that arises when parties have separate and distinct interests; when this is true, there can be a final and appealable judgment for each such party.'" (*Id.* at p. 760; accord, *Sarun II*, *supra*, 41 Cal.App.5th at p. 1130.)

Because the trial court's March 8, 2021 order granting Dignity Health's motion for summary adjudication extinguishes the class claim in its entirety, while Sarun's individual claim of unconscionability survives, the order, to the extent it grants Dignity Health's motion, is immediately appealable. (*In re Baycol Cases I & II*, *supra*, 51 Cal.4th at pp. 761-762; *Kight v. CashCall, Inc. supra*, 200 Cal.App.4th at p. 1386, fn. 2 [order granting defendant's motion for summary adjudication immediately appealable under the death knell doctrine "because the order terminated all class claims and left the named plaintiffs' individual claims for further adjudication in the lawsuit"].)

> b. *Sarun has not forfeited his argument the undisclosed uninsured patient discount creates an open price term*

Dignity Health urges us to affirm the trial court's order without addressing the merits of Sarun's argument that automatic application of the undisclosed uninsured patient discount created an open price term in the admissions agreement, contending Sarun failed to plead this theory in his operative complaint or raise it in his motion for summary adjudication or papers in opposition to Dignity Health's motion. Because Sarun advanced this theory for the first time at the hearing on the motions, Dignity Health asserts, it has been forfeited. (See, e.g., *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 ["'[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited

to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion'"]; *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125 [""'[a] party cannot successfully resist summary judgment on a theory not pleaded""'"].)

Sarun responds that he specifically pleaded in his third amended complaint that the admissions agreement contained an open price term because of the lack of clarity in the term "discounts." Paragraph 17 alleged, in part, "This open price term occurs because 'discounts,' which are an essential component in the determination of an uninsured's payment liability, are based on a large number of individual factors and criteria, many of which are subjective." In his motion papers, Sarun continues, he argued the failure to explain, describe, identify or quantify the term "full charges, unless other discounts apply," made the price term uncertain (that is, open) because, even if "full charges" were considered a clear reference to the chargemaster rates, the "other discounts" term would still be a complete unknown. Dignity Health's failure to mention the existence of the "generally-applicable uninsured patient discount of 25-30 percent" in the admissions agreement was expressly identified as one of the problematic aspects of the "other discounts" terminology. Similarly, arguments concerning the undefined and unknowable contours of the uninsured patient discount were contained in Sarun's opposition to Dignity Health's motion.

13

While the exact argument now asserted by Sarun with respect to the automatic application of the uninsured patient discount was not detailed in his pleading or trial court memoranda, "[i]n assessing whether the issues raised by the plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly." (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585.) What is required is that the pleading allege "the essential facts"—that is, that the allegations "are sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action." (*Ibid.*, internal quotation marks omitted.) Throughout the case Sarun has contended the reference in the admissions agreement to undefined "other discounts," including the undisclosed uninsured patient discount, created an open price term. While the nature of his argument regarding that discount has evolved, Dignity Health had sufficient notice of its role in the class claim to preserve the theory for appeal.

2. *Standard of Review*

A motion for summary adjudication, like a motion for summary judgment, is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Doe v. The Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "In reviewing an order granting summary adjudication, 'we apply the same standard of review applicable on appeal from a grant of summary judgment. [Citation.] Accordingly, "'. . . we take the facts from the record that was before the trial court when it ruled

14

on that motion.  [Citation.]  "'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'"  [Citation.]  We liberally construe the evidence in support of the party opposing summary [adjudication] and resolve doubts concerning the evidence in favor of that party."'"" (*Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 257.)  We then decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

When no ambiguity is asserted or there is no conflicting extrinsic evidence concerning the meaning of a purported ambiguity in a contract, the trial court's interpretation of the contract is a legal determination subject to de novo review.  (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393-394; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439; see *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507 ["in the absence of any conflict in extrinsic evidence presented to clarify an ambiguity," written agreements are interpreted de novo].)

3. *Regulatory Background*

California's statutory scheme regulating the pricing of medical services "requires California hospitals (except 'small and rural hospitals' . . .) to make a written or electronic copy of the hospital's 'chargemaster' available to the public.  [Citation.]  The chargemaster lists the uniform charge for given services represented by the hospital as its gross billed charge for a given service or item, regardless of payer type, and sets forth every

15

hospital charge for every type of service, including emergency room services. [Citation.] The chargemaster must be available on the hospital's Web site or at the hospital itself. [Citation.] In addition, the hospital must post clear and conspicuous notices in its emergency room and its admissions and billing offices informing patients that the chargemaster is available for review and how it may be accessed. [¶] Hospitals must submit their chargemasters to the Office of Statewide Health Planning and Development (OSHPD) on an annual basis [citation], and chargemasters are available to the public on OSHPD's Web site." (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 230; see *Sarun II*, *supra*, 41 Cal.App.5th at p. 1125.)

In addition to the required disclosure of the chargemaster and a list of common outpatient charges, "the state statutory scheme imposes a specific disclosure requirement with respect to persons 'without health coverage,' stating in pertinent part: 'Upon the request of a person without health coverage, a hospital shall provide the person with a written estimate of the amount the hospital will require the person to pay for the health care services, procedures, and supplies that are reasonably expected to be provided to the person by the hospital, based upon an average length of stay and services provided for the person's diagnosis.'" (*Gray v. Dignity Health*, *supra*, 70 Cal.App.5th at p. 231.) This requirement, however, does not apply to the provision of emergency services (see Health & Saf. Code, § 1339.585), which, pursuant to Health and Safety Code section 1317, hospitals are required to provide "to any person presenting at the emergency department 'for any condition in which the person is in danger of loss of life, or serious injury or illness,' and to do so regardless of the ability to pay." (*Gray*, at p. 231.) Section 1317 expressly

16

mandates that "[e]mergency services and care shall be rendered without first questioning the patient or any other person as to his or her ability to pay therefor." (§ 1317, subd. (d).)[7] In addition, federal law requires tax-exempt hospitals such as Northridge Hospital to maintain an emergency care policy that prohibits the hospital from "'engaging in actions that discourage individuals from seeking emergency medical care, such as by demanding that emergency department patients pay before receiving treatment for emergency medical conditions.'" (*Gray*, at p. 232.)

After emergency care is provided, "the patient or his or her legally responsible relative or guardian shall execute an agreement to pay therefor or otherwise supply insurance or credit information." (Health & Saf. Code, § 1317, subd. (d); see *Gray v. Dignity Health*, *supra*, 70 Cal.App.5th at p. 231.) "Finally, the Hospital Fair Pricing Act [citation] requires California hospitals to establish, give notice of, and administer financial aid and charity care policies." (*Gray*, at p. 231.)

4. *The Admissions Agreement Does Not Contain an Open Price Term*

Once again setting aside the various language-based arguments advanced in his papers in the trial court (for example, that the term "full charges" does not clearly refer to the chargemaster schedule), Sarun on appeal contends the automatic

---

[7]    "Federal law imposes like obligations on Medicare participating hospitals . . . . '[I]f any individual . . . comes to the [hospital's] emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department.'" (*Gray v. Dignity Health*, *supra*, 70 Cal.App.5th at pp. 231-232.)

application of the uninsured patient discount to the prices in the chargemaster schedule, "which is unknown to patients and unmentioned in the Contract," creates an open price term within the meaning of section 1611: "Because the Contract fails to reference the automatically applied Uninsured Discount or the amount of such discount, 'the method set forth in the contract' cannot 'be employed to determine the price due.'"[8]

Sarun's argument misperceives the import of section 1611, which, as the trial court observed, is not a consumer protection disclosure statute. Rather, it is part of the chapter in the Civil Code defining consideration necessary for an enforceable contract (see, e.g., Civ. Code, §§ 1605 [defining good consideration], 1608 [prescribing the effect of illegal consideration] & 1615 [placing

---

[8]    Sarun also contends the trial court erred in concluding an agreement that simply sets the maximum amount of consideration (here, the rates listed in the chargemaster schedule), without regard to possible discretionary downward adjustments, does not contain an open price term within the meaning of section 1611. However, because Sarun has limited his argument for reversal of the order granting Dignity Health's motion for summary adjudication to the omission in the admissions agreement of any reference to the automatically applied uninsured patient discount, we need not address this or any other aspect of the trial court's decision. (See *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 747-748 ["'[w]here there is sufficient legal ground to support the granting of [a summary judgment] motion, the order will be upheld regardless of the grounds relied upon by the trial court'"]; *Jackson v. Ryder Truck Rental* (1993) 16 Cal.App.4th 1830, 1836 ["[i]f summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct"].)

the burden of proof on the party seeking to invalidate sufficient consideration]).  As the court held in *Moran, supra,* 3 Cal.App.5th at page 1146, if the parties' agreement describes a means by which a patient can ascertain the amount due for the treatment and services provided, even if the details of that method are not articulated in the agreement, section 1611's reasonable value alternative does not apply.  (See *California Lettuce Growers, Inc. v. Union Sugar Co.* (1955) 45 Cal.2d 474, 482 ["it is well settled that a contract need not specify price if it can be objectively determined"]; *J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 36 [same]; see also *Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 643 ["California law recognizes the principle that when a contract provides such an objective method for ascertaining the purchase price, the contract should not be construed as too indefinite to be enforced"].)

Northridge Hospital's admissions agreement expressly set forth the method to ascertain price—full charges (from the published and publicly available chargemaster schedule) less other applicable discounts.  As to the uninsured patient discount, now the single focus of Sarun's open price term argument, in support of its motion for summary adjudication, Dignity Health submitted, without objection, its Uninsured Patient Discount Policy, dated January 17, 2012, which applied to patients at Northridge Hospital at the time of Sarun's visit to the emergency room.  The policy provided the discount—equal to 25 percent of the Dignity Health hospital's chargemaster charges for the services rendered—was available to any patient who was uninsured and received eligible services as defined in the policy (which included emergency medical services provided in an

19

emergency room setting) whose household income did not exceed $250,000.[9]

The Uninsured Patient Discount Policy required all Dignity Health hospitals to post a summary of the policy in the emergency department, main patient registration/admitting departments and billing office and to provide brochures explaining the policy in registration, admitting, emergency and urgent care areas and in patient financial services offices on each hospital campus. Sarun presented no evidence in opposition to Dignity Health's motion suggesting Northridge Hospital during the class period did not comply with Dignity Health's policy regarding signage and written communication.[10] Thus, like the

---

[9] Because of the policy's eligibility criteria, Sarun is incorrect when he asserts the discount automatically applies to every uninsured patient. The system-wide policy did not require a self-attestation of eligibility for the discount to take effect, but provided an individual facility could choose to have a patient complete an attestation form prior to providing the discount. The policy further specified, "When a discount is provided without attestation, the facility is required to provide notice to the uninsured patient that the discount has been provided based on presumptive eligibility. If patient notifies Dignity Health that they did not meet criteria or Dignity Health obtains information documenting ineligibility, Dignity Health retains the right to rescind the discount."

[10] Dignity Health explained in its respondent's brief that additional evidence regarding the availability of information about the uninsured patient discount—material that it asserts was provided to Sarun during discovery—was not proffered because it was not until the hearing on the cross-motions that Sarun first raised his argument that the automatic application of

published chargemaster schedule for Northridge Hospital, the hospital's uninsured patient discount policy, including the eligibility requirements, far from being "unknown and unknowable," was available to class members.[11] Accordingly, with respect to the uninsured patient discount, the provision in the admissions agreement that an uninsured individual must pay the hospital's "full charges, unless other discounts apply" identified an objective method by which the amount of the consideration could be ascertained. Nothing more is required by section 1611. (See *Moran, supra,* 3 Cal.App.5th at p. 1147 [plaintiff's reliance on a reasonable value theory lacks merit "[b]ecause this case involves an express contract containing a

---

a nondiscretionary uninsured patient discount created an open price term in the admissions agreement.

[11] Dignity Health also provided a copy of its patient payment assistance policy in effect at the time of Sarun's emergency room visit, which, like the uninsured patient policy, was to be explained in notices posted in emergency rooms, urgent care centers, admitting and registration departments and hospital business offices. That policy, which defined eligible services to include "emergency medical services provided in an emergency room," stated, "Eligibility for payment assistance will be considered for those individuals who are uninsured, underinsured, ineligible for any government health care benefit program, and who are unable to pay for their care based upon a determination of financial need." The policy provided patients whose income was at or below 200 percent of federal poverty levels were eligible to receive free care and specified reduced rates for patients with incomes up to 500 percent of federal poverty levels. Patients whose income exceeded 500 percent of federal poverty levels might still be eligible for discounted rates "on a case-by-case basis based on their specific circumstances."

means of determining what plaintiff would have to pay for his medical care"].)

## DISPOSITION

The order granting Dignity Health's motion for summary adjudication is affirmed. Dignity Health is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.