Filed 1/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RUTH CAMPBELL et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> FPI MANAGEMENT, INC., <br><br> Defendant and Respondent. | B322619 <br><br> (Los Angeles County <br> Super. Ct. No. BC576604) |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed in part and affirmed in part.

The Law Offices of Alan Himmelfarb, Alan Himmelfarb; Parisi & Havens, David C. Parisi, Suzanne Havens Beckman; and Thomas W. Kielty for Plaintiffs and Appellants Ruth Campbell, Jair Campbell, Alexis Gray and Sheila Handy.

Lewis Brisbois Bisgaard & Smith, Jeffrey A. Miller, Jon P. Kardassakis, Brittany B. Sutton, and Michael K. Grimaldi for Defendant and Respondent.

_____

The central issue in this appeal is whether tenants in subsidized low-income housing developments have standing to bring suit under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) against a property management company that terminated their tenancies prematurely pursuant to legally deficient notices. We hold that they do.

Plaintiffs Ruth Campbell, Jair Campbell, and Alexis Gray (collectively the HOME plaintiffs) lived in housing managed by FPI Management, Inc. (FPI) that was federally subsidized pursuant to the HOME Investment Partnerships Program (HOME) of the Cranston-Gonzalez National Affordable Housing Act of 1990 (42 U.S.C. § 12701 et seq.). Under that program, the government provides money to housing owners, and in return it requires the owners to rent apartments to low-income tenants and to follow laws protecting those tenants' rights—including by giving at least 30 days' notice before terminating a tenancy. FPI terminated the HOME plaintiffs' tenancies after providing just three days' notice. Plaintiffs allege that FPI's termination of their tenancies with insufficient notice is an unfair business practice actionable under the UCL.

The trial court granted summary judgment to FPI, ruling that the HOME plaintiffs did not suffer an injury in fact as is required to confer standing under the UCL because they remained in possession of their apartments for more than 30 days after receiving the three-day termination notices. However, the HOME plaintiffs have shown that they were prematurely deprived of property rights and subjected to imminent legal peril when FPI provided legally deficient termination notices. The HOME plaintiffs faced these consequences even as they remained in possession of their apartments for more than 30 days. We hold

2

that the HOME plaintiffs' loss of property rights and exposure to legal peril amount to an injury in fact sufficient to confer standing under the UCL.

A different analysis applies to plaintiff Sheila Handy and the class she represents (collectively, the Section 8 plaintiffs), who lived in housing managed by FPI that was subsidized by section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. § 1437f) (Section 8).  The trial court ruled that FPI was not required to provide 30 days' notice before terminating a Section 8 tenancy.  The Section 8 plaintiffs fail to demonstrate that this was error.

In this appeal, plaintiffs contest the trial court's orders granting FPI's motion for summary judgment, denying plaintiffs' motion for summary adjudication, and awarding costs to FPI as the prevailing party.  We reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, a group of low-income housing tenants, first brought suit in 2015 alleging a variety of claims against 27 property owners and managers.  In the intervening years, the parties and claims have been significantly revised and narrowed.

At issue in this appeal is plaintiffs' claim in the operative fifth amended complaint that FPI, their former property manager, terminated their tenancies through unlawful notices of termination of tenancy, an unfair business practice under the UCL.

A. *FPI Terminates Plaintiffs' Tenancies with Less than 30 Days' Notice*

1. *Ruth and Jair Campbell*

Between 2011 and 2016, Ruth Campbell and her grandson Jair Campbell lived in a federally subsidized apartment in a 49-unit building known as Casa De Angeles in Los Angeles, California.

The owner of Casa De Angeles, AMCAL Casa De Angeles Fund, LP, had received approximately $3.5 million from the City of Los Angeles in 2007 for the purpose of purchasing the property and constructing the building. The City's subsidy was paid from HOME funds it had received from the United States Department of Housing and Urban Development. In exchange for its receipt of those funds, the property owner agreed to make a certain number of units available to and affordable for low-income households and to abide by the terms of the HOME program.

In March 2009, the property owner retained FPI to manage and lease Casa De Angeles. In November 2011, FPI, acting on behalf of the owner, agreed to rent a HOME-subsidized apartment at Casa De Angeles to the Campbells.

The Campbells allege that during their tenancy, their only source of income was government assistance that came in three separate payments each month. They also allege that, with the knowledge of the building's management, they regularly had to pay rent late because of the timing of their receipt of the assistance payments.

On March 10, 2015, FPI served the Campbells with a three-day notice to pay rent or quit. The Campbells allege that shortly thereafter the sprinkler system in an upstairs unit flooded their apartment, causing mold and significant damage to their

4

personal property. They further allege that building management refused to offer alternative accommodations or replace their ruined property.

On April 6, 2015, FPI served the Campbells with another three-day notice to pay rent or quit. The Campbells allege they had the ability to pay the demanded rent and attempted to make a partial payment, but FPI would not accept it. Although it acknowledges the partial payment attempt, FPI asserts that the Campbells never tendered the full amount of back rent it alleges they owed. On April 16, 2015, an unlawful detainer action was filed against the Campbells on behalf of the property owner. The parties ultimately resolved the matter with a stipulation entered on November 18, 2015. Under the stipulation, the Campbells agreed to vacate the unit by January 9, 2016, in exchange for waiver of the alleged back rent.

2.    *Alexis Gray*

In 2016, Alexis Gray lived in a federally subsidized low-income unit in the Terracina Apartments in Los Angeles, California.

The owner of the Terracina Apartments, AMCAL Terracina Fund, L.P., received approximately $5.8 million from the County of Los Angeles's HOME funds to finance the apartment building in 2012. The owner later retained FPI to manage the property.

In January 2016, Alexis Gray entered a lease to live in one of the HOME-subsidized units on the property. Like the Campbells, Gray's unit was subject to affordability restrictions that were imposed as part of the property owner's receipt of the HOME funds.

On February 4, 2016, FPI served Gray with a three-day notice to pay rent or quit. She paid the demanded rent on

February 8. FPI served Gray with another three-day notice to pay rent or quit on March 4, 2016. Gray alleges that she later sent management a letter explaining that she was down on her luck, her car was towed, she was working part-time and unable to secure full-time work, and she loved her apartment and wanted to stay there.

FPI served Gray additional three-day notices to pay rent or quit on April 4, May 4, and August 4, 2016. Gray alleges she was turned away when she attempted to pay her August rent. FPI denies this. On August 12, 2016, an unlawful detainer was filed against Gray on behalf of the property owner. After Gray failed to file an answer, the court entered a default judgment and later issued a writ of possession. The sheriff's department issued a notice requiring Gray to vacate by September 21, 2016. Gray moved out on October 4, 2016.

### 3. *Sheila Handy*

Sheila Handy moved into an apartment at Casa De Angeles after signing a lease in September 2009. Handy's rent was subsidized by Section 8.

On March 10, 2015, FPI served Handy with a three-day notice to pay rent or quit. Handy alleges that she attempted to pay her rent that month, but the mailbox where she regularly deposited rent had been removed and there was no one in the management office to pay. On April 6, 2015, FPI served Handy with another three-day notice to pay rent or quit. Handy alleges that FPI refused her attempt to pay the demanded rent within three days of receiving the notice. FPI denies this and asserts Handy had not paid rent for three months. On April 16, 2015, an unlawful detainer was filed against Handy on behalf of the

6

property owner.  Handy ultimately moved out in July 2015, and the action was dismissed.

B.   *Plaintiffs Bring Suit Against Property Owners and Managers*

On March 24, 2015, two tenants filed a class action lawsuit against 27 property owners and managers, including FPI, alleging claims under the UCL and claims for unjust enrichment, injunctive relief, and fraudulent concealment.  As the case evolved, the original plaintiffs were eventually replaced by others, including the four plaintiffs who bring this appeal, and the claims were significantly revised.

On January 23, 2019, plaintiffs filed the operative fifth amended complaint, which alleges that FPI and other defendants imposed improper late fees and terminated class members' tenancies unlawfully with less than 30 days' notice. On April 10, 2019, the trial court granted plaintiffs' request to dismiss their late fee claims, as well as the associated plaintiffs and defendants.  This left only the plaintiffs who bring this appeal and their allegations that the defendants' practice of terminating tenancies without 30 days' notice amounts to an unfair business practice under the UCL, violates the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), and constitutes wrongful termination of tenancies.  These causes of action were brought on behalf of three putative classes composed of former HOME tenants, Section 8 tenants, and tenants whose tenancies were subject to publicly recorded federal regulatory agreements between local housing authorities and business owners.

On January 25, 2019, the trial court certified the HOME class.  On September 26, 2019, the court denied plaintiffs' motion

to certify the Section 8 and regulatory agreement classes. On January 16, 2020, the court decertified the HOME class. On April 20, 2021, we granted plaintiffs' petitions for writ of mandate and directed the trial court to vacate its order denying class certification, vacate its order decertifying the HOME class, and issue a new order certifying the Section 8 and regulatory agreement classes. (*Campbell v. FPI Management, Inc.* (Apr. 20, 2021, B302664) [nonpub. opn.].)

C. *Plaintiffs and FPI File Cross-motions for Summary Judgment, and the Court Denies Both*

On September 14, 2021, FPI and the remaining named defendants filed a motion for summary judgment or in the alternative summary adjudication. The defendants concurrently filed a motion for a no merits determination as to plaintiffs' claim under the CLRA. On January 12, 2022, plaintiffs filed a motion for summary adjudication of their UCL claim on behalf of the HOME and Section 8 classes. The matters were heard together.

On March 30, 2022, the trial court granted the defendants' no merits motion as to the CLRA claim and denied without prejudice the defendants' motion for summary judgment or adjudication on procedural grounds.

The same day, the court denied plaintiffs' motion for summary adjudication. The court found that the Section 8 plaintiffs had not shown that they were legally entitled to 30 days' notice, negating their claim of an unfair business practice. As for the HOME plaintiffs, the court held that even if 30 days' notice was required, the HOME plaintiffs lacked standing under the UCL because they remained in their apartments for more than 30 days after FPI served termination notices.

D.    *FPI Renews Its Motion for Summary Judgment, and the Court Grants the Motion*

On May 16, 2022, FPI renewed its motion for summary judgment or summary adjudication of plaintiffs' UCL claim and claim for wrongful termination of tenancy.[1]  On June 21, 2022, the trial court granted summary judgment to FPI.  As in its order denying plaintiffs' summary adjudication motion, the court ruled that the UCL claim failed because the Section 8 tenants were not legally entitled to 30 days' notice and the HOME tenants lacked standing for want of an injury in fact.  The court also ruled that plaintiffs' claim for wrongful termination of tenancy was not recognized under California law.

On July 13, 2022, the trial court entered judgment for FPI. Plaintiffs timely appealed.  On appeal, plaintiffs challenge the order denying their motion for summary adjudication and the order granting FPI's motion for summary judgment, but only as those orders relate to the UCL claim.

After judgment was entered, FPI submitted a memorandum of costs, and plaintiffs moved to strike or tax costs. On November 4, 2022, the trial court granted the motion in part and denied it in part, awarding costs to FPI in the amount of $42,710.42.  Plaintiffs timely appealed this order as well.  We granted plaintiffs' unopposed motion to consolidate the appeals.

---

[1]    In its motion, FPI did not specifically address the claims of the certified regulatory agreement class.  The trial court likewise did not address the regulatory agreement class claims in its ruling on FPI's motion, and the parties make no argument about these claims on appeal.  Accordingly, we do not address these claims.

## DISCUSSION

### A. *Standard of Review*

"A motion for summary judgment or summary adjudication is properly granted only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 582; see Code Civ. Proc., § 437c, subds. (c) & (f); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) We review a ruling on summary judgment or summary adjudication de novo and "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law." (*Soria*, at p. 582.) In so doing, we liberally construe the evidence in favor of the party opposing the motion and resolve all doubts concerning the evidence in their favor. (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606; *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1444.)

"A defendant may bring a motion [for summary judgment] on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action." (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702; see Code Civ. Proc., § 437c, subds. (o)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) "To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,'

10

evidence necessary to establish at least one element of the cause of action." (*Luebke*, at p. 702.) "Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.'" (*Id.* at pp. 702-703; see Code Civ. Proc., § 437c, subd. (p)(2).)

On the other hand, "when a plaintiff moves for summary adjudication, the plaintiff meets 'his or her burden of showing that there is no defense to a cause of action' if the plaintiff 'prove[s] each element of the cause of action entitling the party to judgment on the cause of action.'" (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 80 (*Donohue*); see Code Civ. Proc., § 437c, subd. (p)(1).) When plaintiffs bear the burden of proof by a preponderance of evidence at trial, they "'must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, [they] would not be entitled to judgment *as a matter of law*, but would have to present [their] evidence to a trier of fact.'" (*Quidel Corp. v. Superior Court* (2020) 57 Cal.App.5th 155, 164 (*Quidel*).) "If the plaintiff meets [their] burden, the defendant must set forth specific facts showing a triable issue of material facts exist." (*Ibid.*; Code Civ. Proc., § 437c, subd. (p)(1).)

B. *The Trial Court Erred in Summarily Adjudicating the HOME Plaintiffs' UCL Claim in FPI's Favor*

Plaintiffs allege that FPI engaged in unfair competition under the UCL when it terminated the HOME plaintiffs' tenancies with insufficient notice.

Business and Professions Code section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

11

advertising and any act prohibited by Chapter 1 (commencing with Section 17500)." (Bus. & Prof. Code, § 17200.) Relevant to plaintiffs' action, the "unlawful" prong of the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1143.) In other words, "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." (*Berryman v. Merit Property Management, Inc*. (2007) 152 Cal.App.4th 1544, 1554.) The predicate alleged by the HOME plaintiffs is FPI's violation of the HOME statute, title 42 United States Code section 12755(b).

1. *The HOME statute requires 30 days' notice before terminating a tenancy*

The federal HOME Investment Partnerships Program (42 U.S.C. §§ 12741-12756) was enacted by Congress in 1990 pursuant to the Cranston-Gonzalez National Affordable Housing Act of 1990 (42 U.S.C. § 12701 et seq.). It authorizes the Secretary of the U.S. Department of Housing and Urban Development "to make funds available to participating jurisdictions for investment to increase the number of families served with . . . affordable housing and expand the long-term supply of affordable housing." (42 U.S.C. § 12741.) A property owner who accepts HOME funds must abide by statutory and regulatory measures that are meant to ensure HOME-assisted housing is occupied by low-income tenants and landlords protect the rights of those tenants. As relevant here, the HOME statute prohibits fund recipients from terminating tenancies with less than 30 days' notice: "An owner shall not terminate the tenancy . . . of a tenant of rental housing assisted under this

12

subchapter except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause. Any termination . . . must be preceded by not less than 30 days by the owner's service upon the tenant of a written notice specifying the grounds for the action. Such 30-day waiting period is not required if the grounds for the termination . . . involve a direct threat to the safety of the tenants or employees of the housing, or an imminent and serious threat to the property (and the termination . . . is in accordance with the requirements of State or local law)." (42 U.S.C. § 12755(b).)

The requirement of 30 days' notice is reiterated in the HOME program regulations: "An owner may not terminate the tenancy . . . of a tenant of rental housing assisted with HOME funds, except for serious or repeated violation of the terms and conditions of the lease; for violation of applicable Federal, State, or local law; for completion of the tenancy period for transitional housing or failure to follow any required transitional housing supportive services plan; or for other good cause. . . . To terminate . . . tenancy, the owner must serve written notice upon the tenant specifying the grounds for the action at least 30 days before the termination of tenancy." (24 C.F.R. § 92.253(c) (2023).)

2.    *FPI violated the 30-day notice requirement*

The owners of the apartment buildings where the HOME plaintiffs lived received more than $9 million in federal funds under the HOME program to provide housing to low-income residents. Having received these subsidies, the owners were bound to follow the HOME program rules, including the rule requiring 30 days' notice prior to terminating a tenancy. The owners engaged FPI to provide property management.

13

Thereafter, FPI served the HOME plaintiffs with notices that gave the plaintiffs three days to pay rent or quit the premises. The HOME plaintiffs' tenancies were terminated when the three-day notice periods expired. (*Downing v. Cutting Packing Co.* (1920) 183 Cal. 91, 95-96 (*Downing*) [when a tenant is served with a three-day notice to pay or quit and fails to pay or quit within three days, the tenancy terminates at the conclusion of the third day]; *Gersten Companies v. Deloney* (1989) 212 Cal.App.3d 1119, 1128-1129 (*Gersten Companies*) [same].)

FPI argues that its three-day notices did not terminate the HOME plaintiffs' tenancies because a tenancy terminates only when the tenant gives up possession of the property. But the notices that FPI served on the HOME plaintiffs say just the opposite: They warn that the tenants must pay money or vacate the premises within three days, and they state that if the tenants fail to timely comply the lease is forfeited. Thus, the notices effectuated the termination of the tenancies at the conclusion of the third day. (*Downing, supra*, 183 Cal. at pp. 95-96.)[2] By providing just three days' notice instead of the legally required 30 days' notice, FPI violated the HOME statute. (42 U.S.C. § 12755(b).)

FPI contends that the HOME statute's 30-day notice requirement does not apply where, as here, a tenant has failed to pay rent. Nothing in the statute or its accompanying regulation supports that contention. To the contrary, the statute provides that the "30-day waiting period" shall apply to a termination of tenancy unless "the grounds for the termination . . . involve a

---

[2]     To be sure, a court could ultimately declare such termination invalid, but until that occurs the lease is forfeited and the tenancy is terminated.

14

direct threat to the safety of the tenants or employees of the housing, or an imminent and serious threat to the property." (42 U.S.C. § 12755(b); see also 24 C.F.R. § 92.253(c).) That exception does not apply here, because FPI did not terminate the HOME plaintiffs' tenancies for any threat.

FPI also argues that the HOME statute's 30-day notice requirement conflicts with the three-day notice requirement of Code of Civil Procedure section 1161, subdivision 2, and that applying the HOME statute here would require finding that the federal law "silently preempts" the state statute. Not so. Code of Civil Procedure section 1161 generally requires a landlord to provide three days' notice with an opportunity to cure before terminating a tenancy for nonpayment of rent. However, it does not preclude a longer notice period, and our courts have long recognized a tenancy may be subject to a longer notice period or multiple notice requirements that do not conflict. (See *Devonshire v. Langstaff* (1935) 10 Cal.App.2d 369, 372 [parties to a lease may require notice that is different from and longer than the statutory notice requirement]; *Gersten Companies*, *supra*, 212 Cal.App.3d at pp. 1129-1130 [state and federal notice requirements may both apply, with their respective notice periods running concurrently].) Such was the case here. Because the property owners received federal subsidies under the HOME program, they were bound to comply with the terms of the HOME program. Nothing prevented FPI from complying with the HOME statute's 30-day notice requirement and *also,* after 27 days had elapsed, serving a three-day notice and opportunity to cure pursuant to Code of Civil Procedure section 1161.

Finally, we reject FPI's claim that it cannot be held liable for a violation of the HOME statute because it was merely an

agent of the property owners. The HOME plaintiffs do not seek to hold FPI responsible for the actions of the owners; they allege FPI itself engaged in the unlawful acts giving rise to liability in this case. Specifically, they contend (and it is undisputed) that FPI served them with the unlawful termination notices. FPI may be held liable for its unlawful actions even if it undertook those actions pursuant to its agency relationship with the owners. (Civ. Code, § 2343 ["[o]ne who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [¶] . . . [¶] [w]hen his acts are wrongful in their nature"].)

> 3. *The HOME plaintiffs lost property rights and were exposed to legal peril as a result of FPI's failure to provide the required notice*

The trial court found that the HOME plaintiffs did not suffer injury because they remained in possession of their apartments for more than 30 days after receiving FPI's three-day notices to pay rent or quit, during which time they did not pay the demanded rent. This takes too narrow a view of the HOME plaintiffs' injury. The injury alleged by the HOME plaintiffs is not only the loss of property *possession*, but also the loss of property *rights*. As we explain, an action that deprives a tenant of property rights—and further subjects the tenant to imminent legal peril—can confer standing under the UCL.

When FPI terminated the HOME plaintiffs' leases upon only three days' notice, the HOME plaintiffs suffered a material change in their legal rights to the property where they lived. While they remained in possession, they no longer had the property rights of lawful tenants. To understand the distinction between loss of possession of property and loss of property rights,

16

some background on the nature of the landlord-tenant relationship is necessary.  That relationship is governed by both the contractual rights conferred by the lease itself, and by state property law, which affords additional rights and obligations to tenants.  (*Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1190 ["[a] lease is both a conveyance of an estate in real property and a contract between the lessor and the lessee for the possession and use of the property in consideration of rent"].)  Under state property law, a valid tenancy pursuant to a lease "gives the lessee the exclusive possession of the premises against all the world, including the owner, for the term of the lease." (*Ibid.*)  "Thus, the lessee has the right during the term of the lease to the full use and enjoyment of the leased property limited only by a restriction not to commit waste and by the terms of the lease.  [Citation.] Every lease includes an implied covenant of quiet enjoyment protecting the lessee from any act or omission by the lessor which interferes with the lessee's right to use and enjoy the premises for the purposes contemplated by the lease."  (*Id.* at pp. 1190-1191.)

Once the tenancy is terminated, however, the tenant loses both contractual rights and property rights under state law.  This loss occurs even when the tenant remains in possession of the property.  A "tenancy at sufferance" or "holdover tenancy" is created when a tenant who previously had the right of occupancy continues in possession without the landlord's consent after termination of the tenancy.  (*Gartlan v. C.A. Hooper & Co.* (1918) 177 Cal. 414, 426; *Multani v. Knight* (2018) 23 Cal.App.5th 837, 852 (*Multani*).)  With a holdover tenancy, there is no consensual relationship between landlord and tenant.  (*Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820 (*Aviel*).)

A holdover tenant no longer has rights pursuant to the covenant of quiet enjoyment. (*Multani, supra,* 23 Cal.App.5th at p. 855.) And as a result, a holdover tenant has far fewer protections if their home or property is destroyed. For example, a holdover tenant lacks any right to sue for nuisance. (*Id.* at pp. 855-856.) Thus, in *Multani,* the holdover tenant had no cause of action against her landlord for nuisance even after a sewage spill contaminated the premises. (*Ibid.*) Additionally, with a holdover tenancy, the lease is no longer effective to define the contractual obligation to pay rent, and the landlord may demand from the tenant a payment to account for the value of the property. (See *Colyear v. Tobriner* (1936) 7 Cal.2d 735, 742-743; *Aviel, supra,* 161 Cal.App.4th at p. 820.) As a result, a landlord may require a holdover tenant to pay more in rent than the landlord could have demanded under the prior lease. (See *Colyear,* at pp. 742-743.) Finally, a holdover tenant may incur liability for damages to the landlord; if a landlord signs a lease with a new tenant and the new tenant is unable to move in because the holdover tenant is still there, the holdover tenant may be liable for intentional interference with contractual relations. (*Ramona Manor Convalescent Hosp. v. Care Enterprises* (1986) 177 Cal.App.3d 1120, 1131-1132.)

Once a landlord terminates a tenancy, therefore, a person who remains in possession of the property as a holdover tenant loses significant property rights and is immediately subject to legal peril that did not exist under the tenancy.

The serious consequences that flow from termination of a tenancy underscore the critical nature of a proper and timely notice in advance of termination. Had FPI given the HOME plaintiffs the legally required 30 days' notice before terminating

18

their tenancies, the plaintiffs would have had several weeks in which they would have enjoyed the full panoply of property rights associated with lawful tenancy. During those weeks, the plaintiffs would have been entitled to quiet enjoyment and exclusive use of their properties. They would have been free from the risk of losses to their own personal property that may be caused by negligence or nuisance, and from the imminent threat of liability to the landlord for the value of the property and other damages. And they could have located alternative housing without the cloud of an imminent eviction proceeding. FPI's three-day notice unlawfully deprived the HOME plaintiffs of their property rights and put them in jeopardy at a time when they should have enjoyed all the legal rights of tenants.

### 4. *The HOME plaintiffs' injuries confer standing under the UCL*

"Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages." (*Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1166 (*Sarun*).) That changed in 2004 with the electorate's approval of Proposition 64. (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1086 (*California Med. Assn.*).) Business and Professions Code section 17204 now extends private party standing only to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business

practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*).)

"While Proposition 64 clearly was intended to abolish the portions of the UCL . . . that made suing under [it] *easier* than under other comparable statutory and common law torts, it was not intended to make [its] standing requirements comparatively *more* onerous." (*Kwikset, supra,* 51 Cal.4th at p. 335.)  Thus, "[o]ur cases . . . teach that economic injury for purposes of UCL standing, even after Proposition 64, is not limited to out-of-pocket expenditures for which no value has been received, or to objectively determined overpayments." (*California Med. Assn.*, *supra*, 14 Cal.5th at p. 1089.)  Rather, "'"an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."'" (*Sarun*, *supra*, 232 Cal.App.4th at p. 1167, quoting *Kwikset*, at p. 325, fn. 7.)

As is the case here, UCL actions often proceed as class or representative actions.  (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 313 (*Tobacco II*).)  "'[C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights.  [They] make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions.'" (*Ibid.,* quoting *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 126.) When a UCL case proceeds as a class action, the class representatives must demonstrate standing.  (*Tobacco II*, at p. 315.)

In *Kwikset*, consumers who purchased locksets in reliance on an allegedly false "'Made in U.S.A.'" label brought a collective action against the lock manufacturer. The Court held that the plaintiffs "ha[d] 'lost money or property' within the meaning of Proposition 64" even though the products were not objectively defective and the plaintiffs, "while they had spent money, [had] 'received locksets in return.'" (*Kwikset*, *supra*, 51 Cal.4th at pp. 317, 331.) The plaintiffs were not "out of pocket" for a lockset that lacked value, but they had purchased products they would not have bought had the products been accurately labeled. (*Id.* at pp. 329-330.) This was sufficient to afford them standing under the UCL. As the court observed, "There are innumerable ways in which economic injury from unfair competition may be shown," including, among others, by demonstrating that a plaintiff had "*a present or future property interest diminished.*" (*Id.* at p. 323, italics added.)

Indeed, California courts have regularly held that plaintiffs have standing to bring suit under the UCL when they are subjected to an invasion of economic or property rights, or face imminent legal peril, even when they do not suffer actual out-of-pocket financial damages or loss of tangible property. For instance, in *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788 (*Clayworth*), the Supreme Court held that retail pharmacies had standing under the UCL to assert claims against drug makers allegedly engaged in price fixing, even though the plaintiff pharmacies did not lose any money from the alleged price-fixing scheme because they had passed on any overcharges to their customers. The Court rejected the contention that the plaintiff pharmacies "suffered no compensable loss because they were able to mitigate fully any injury by passing on the overcharges." (*Id.*

21

at p. 789.)  "While [defendants] argue that ultimately [plaintiffs] suffered no compensable loss because they were able to mitigate fully any injury by passing on the overcharges, this argument conflates the issue of standing with the issue of the remedies to which a party may be entitled.  That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them."  (*Ibid.*)

In *Sarun*, *supra*, 232 Cal.App.4th at pages 1167 to 1169, this court held that the plaintiff had alleged an injury sufficient to confer standing to sue a healthcare provider under the UCL for unlawful billing practices based solely on the plaintiff's receipt of an unlawfully inflated medical bill.  This was so even though the plaintiff alleged he "'had no intention of paying or seeking financial aid in order to pay an outlandish bill . . . .'"  (*Id.* at p. 1164.)  The bare fact that the plaintiff had been overbilled constituted sufficient injury:  "[T]he existence of an enforceable obligation, without more, ordinarily constitutes actual injury or injury in fact."  (*Id.* at p. 1167.)  Indeed, "upon receipt of this bill Sarun faced at least an imminent invasion of a legally protected interest."  (*Id.* at p. 1169.)  Once the plaintiff received the bill, he would have had to take steps to remedy the situation created by the unlawful overbilling.  Although he did not actually take those steps, "[t]he tangible burden" of the process for applying for a reduction in the bill "is far more than the 'identifiable trifle' required to confer injury in fact standing."  (*Ibid.*)

The court reached a similar result in *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373 (*Hale*).  There, the court found a plaintiff was injured sufficient to state a UCL claim when she alleged she had received a hospital overcharge.  (*Id.* at

22

pp. 1383-1384.)  At the time of her suit, Hale had only paid $500 of her $14,447.65 medical bill.  (*Id.* at p. 1383.)  Even so, the court found that Hale had suffered an injury in fact.  Notwithstanding the lack of full payment, the plaintiff was obligated to pay the account balance:  "Thus, she faces at least an *imminent* invasion or injury to a legally protected interest."  (*Id.* at pp. 1383-1384.)  That risk was imminent because it was "'ready to take place,' 'hanging threateningly over one's head,' and 'menacingly near.'"  (*Id.* at p. 1384.)  The obligation to pay and the existence of a legal threat were sufficient to confer standing on the plaintiff.  (*Ibid.*)

Other courts have similarly found that plaintiffs have suffered an injury in fact for purposes of UCL standing when, even without actual expenditure of money or loss of tangible property, they face imminent financial or legal perils.  (See *Rubio v. Capital One Bank* (9th Cir. 2010) 613 F.3d 1195, 1204 [plaintiff adequately alleges standing when credit card company gave choice to either pay off balance and cancel account or accept a fraudulently imposed higher interest rate]; *Rex v. Chase Home Finance LLC* (C.D.Cal. 2012) 905 F.Supp.2d 1111, 1147 [standing adequately alleged where defendants damaged plaintiff's credit by reporting false information to credit reporting bureaus]; *Lane v. Wells Fargo Bank, N.A.* (N.D.Cal. June 21, 2013, No. C 12-04026 WHA) 2013 U.S.Dist. Lexis 87669, pp. *31-32 [borrowers who had not yet paid allegedly improper expense charged by the defendant had standing].)

In the case at hand, the trial court ruled that the HOME plaintiffs lacked standing under the UCL because they had remained in possession of their properties and did not pay rent for more than 30 days after FPI served them with termination notices.  According to the court, the HOME plaintiffs did not

change position "in any way cognizable under the UCL as a result of receiving only 3-days' notice" and "the only loss of money arguably involved is defendant's lost rental income from the various months of delinquent payment." FPI makes a similar argument on appeal. This contention fails to account for the other injuries suffered by the HOME plaintiffs when they lost property rights because of FPI's premature termination notices. Even while they temporarily remained in possession of their properties, the HOME plaintiffs were transformed into holdover tenants and they faced imminent eviction. The fact that the HOME plaintiffs were able to stay in their apartments for some time did not erase these injuries; it merely mitigated them. A plaintiff's ability to mitigate losses does not deprive the plaintiff of standing. (*Clayworth*, *supra*, 49 Cal.4th at p. 789.)

Nor is it dispositive that the HOME plaintiffs were behind on their rent. To be sure, rent payments could be one measure of economic injury, but failure to make such payments does not prove an absence of injury. The plaintiffs in *Sarun* and *Hale* suffered an injury in fact even though they did not pay the amount of their overcharged medical bills, the pharmacies in *Clayworth* suffered an injury in fact even though they passed on any potential loss to their customers, and the HOME plaintiffs suffered an injury in fact even though they did not pay the demanded rent. The HOME plaintiffs—like their counterparts in these cases—were subjected to a "tangible burden" (*Sarun*, *supra*, 232 Cal.App.4th at p. 1169) and faced "an *imminent* invasion or injury to a legally protected interest" (*Hale*, *supra*, 183 Cal.App.4th at pp. 1383-1384) sufficient to constitute an injury in fact. The HOME plaintiffs' "burden" was to their property rights, and the "imminent invasion or injury" they faced

24

was the result of being improperly transformed into holdover tenants. They lost full use and enjoyment of their properties. They had to live in their apartments under risk of financial liability for damages in addition to rent. And they faced an immediate threat of eviction and all the collateral consequences that an eviction can have for future rental opportunities. We hold this surpasses the "identifiable trifle" needed to show injury in fact for UCL standing. (See *Sarun*, at p. 1167; *Kwikset*, *supra*, 51 Cal.4th at pp. 324-325 & fn. 7.)

FPI asserts that the HOME plaintiffs were not injured by its actions because the plaintiffs would inevitably be evicted for nonpayment of rent regardless of the amount of notice given. FPI cites cases holding that a plaintiff cannot sue under the UCL if they did not suffer injury, or if their injury was not caused by the defendant. (See *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 639 [plaintiff who suffered no injury as a result of defendants' allegedly unlawful conduct lacks standing under the UCL]; *Princess Cruise Lines, Ltd. v. Superior Court* (2009) 179 Cal.App.4th 36, 43-44 [plaintiffs who did not rely upon defendant's alleged misrepresentation lack standing under the UCL]; *Turner v. Wells Fargo Bank NA* (9th Cir. 2017) 859 F.3d 1145, 1151 [plaintiffs who cannot show that their injury was caused by defendant lack standing under the UCL].) Even if FPI were able to conclusively demonstrate that plaintiffs would have been evicted for nonpayment of rent notwithstanding the amount of notice, their argument misses the mark because the HOME plaintiffs have demonstrated both that they suffered an injury (loss of property rights and exposure to imminent legal peril) and that their injury was caused by FPI's unlawful conduct (the premature termination of tenancy). Had FPI given the legally

required 30 days' notice, rather than merely three days' notice, the HOME plaintiffs would have enjoyed the full panoply of property rights associated with their leasehold tenancy for an additional 27 days. Across those 27 days, they would have been shielded from the liability that a holdover tenant faces, and they would have had more time to avoid an eviction action. That is sufficient injury to confer standing under the UCL.

5.     *The HOME plaintiffs may seek equitable relief against FPI*

FPI contends that the judgment should be affirmed on the alternative ground that the HOME plaintiffs have no viable remedy under the UCL. This contention is unavailing. The HOME plaintiffs seek restitution, a form of equitable relief that is available in a UCL action. (*Tobacco II*, *supra*, 46 Cal.4th at p. 312.) The trial court rejected FPI's argument regarding an absence of remedies, finding that "[p]laintiffs are entitled to seek restitution" before explaining that any determination of whether there is "restitution to be had" is a question that it did not need to address given its rejection of the HOME plaintiffs' claim on standing grounds.

FPI asserts that no restitution could ever be appropriate in this case because it was merely an agent of the owner and thus unable to restore the HOME plaintiffs' rent money or possession. This contention rests on a mischaracterization of the restitution claim. The HOME plaintiffs are not seeking to recover rent payments, nor do they expect to be able to reobtain possession of their former apartments. Rather, they seek a restitution award based on the monetary equivalent of the loss of property rights they suffered as a result of FPI's unlawful termination of their tenancies, and to disgorge profits that FPI earned from its

26

unlawful management practices. To that end, a plaintiff may recover monetary restitution for the loss of rental property when the court lacks the ability to make the plaintiff whole by restoring the property interest. (See *Beach Break Equities, LLC v. Lowell* (2016) 6 Cal.App.5th 847, 853 [tenant subject to unlawful eviction may seek monetary restitution from defendant when it is not possible to obtain an award of possession]; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 657-662 [same].) It follows that the HOME plaintiffs may be entitled to restitution to redress harms suffered as a result of FPI's unlawful termination of their tenancies. While the HOME plaintiffs have not yet demonstrated what specific harms they suffered as a result of FPI's actions, how such harms can be given a monetary value for purposes of establishing a restitution award, or how FPI profited from its unlawful management practices, those questions can be decided at a later stage in the case.[3]

Because the trial court erred in ruling that the HOME plaintiffs lack standing, and FPI has failed to show that the order should be affirmed on alternative grounds, the order granting summary judgment to FPI on the HOME plaintiffs' UCL claim must be reversed.

---

[3] For example, if FPI's premature termination of the Campbells' tenancy and the attendant unlawful termination of the right to quiet enjoyment prevented the Campbells from recovering compensation for the plumbing leak that allegedly damaged their property, such harm may support a claim for monetary restitution. On remand, the HOME plaintiffs may demonstrate any specific harms they suffered as a result of FPI's actions.

6.    *The trial court did not err in denying the HOME plaintiffs' motion for summary adjudication*

Although we hold that the trial court erred in granting summary judgment to FPI on the HOME plaintiffs' UCL claim, it does not necessarily follow that the court should have granted plaintiffs' motion for summary adjudication of that claim. A plaintiff moving for such relief must prove each element of the cause of action. (*Donohue*, *supra*, 11 Cal.5th at p. 80.) On appeal, we review the motion de novo and "independently assess the correctness of the [trial court's] ruling, applying the same legal standard as the trial court to determine if there are genuine issues of material fact." (*Quidel, supra*, 57 Cal.App.5th at p. 164.)

The HOME plaintiffs have not proven every element of their UCL cause of action. To be sure, plaintiffs have demonstrated that their loss of property rights caused by FPI's unlawful notice was sufficient to give them standing to bring suit under the UCL. For this violation, restitution is a potential remedy. As noted above, however, plaintiffs have not demonstrated specific harms suffered for which they are entitled to restitution. (See *Kwikset, supra*, 51 Cal.4th at pp. 335-336 ["the standards for establishing standing under [Business and Professions Code] section 17204 and eligibility for restitution under section 17203 are wholly distinct"].) The HOME plaintiffs urge that the proper amount of any restitution is a question for a later proceeding. (See *People ex rel. Feuer v. Superior Court* (*Cahuenga's the Spot*) (2015) 234 Cal.App.4th 1360, 1374.) Even so, to be entitled to summary adjudication, plaintiffs would need to demonstrate that they are affirmatively entitled to restitution, which they did not do in their moving papers. Accordingly, we

affirm the trial court's denial of the HOME plaintiffs' motion for summary adjudication.

### C. *The Trial Court Did Not Err in Rejecting the Section 8 Plaintiffs' Claim*

The Section 8 plaintiffs' claim is similar to that of the HOME plaintiffs. They contend that tenants whose rent was subsidized through Section 8 are entitled to 30 days' notice before their tenancies can be terminated. They further argue that FPI's failure to provide such notice to the Section 8 plaintiffs constituted an unlawful business practice in violation of the UCL. The trial court rejected this argument, ruling that the Section 8 plaintiffs had not shown they were legally entitled to 30 days' notice. We agree.

Unlike the HOME plaintiffs, the Section 8 plaintiffs do not identify a statute that would have required FPI to give them 30 days' notice before terminating their tenancies, and we are not aware of any such statutory authority.[4] Instead, they assert that their right to 30 days' notice is established in three cases: *Anchor Pacifica Management Co. v. Green* (2012) 205 Cal.App.4th 232 (*Anchor Pacifica*); *Mitchell v. Poole* (1988) 203 Cal.App.3d Supp. 1 (*Mitchell*); and *Gallman v. Pierce* (N.D.Cal. 1986) 639 F.Supp. 472 (*Gallman*). According to plaintiffs, these cases show that "California law requires a minimum 30 days written notice by the owner specifying the grounds for the termination of tenancy."

---

[4] In 2020, Congress enacted a statute requiring landlords to provide 30 days' notice prior to terminating certain types of federally supported tenancies, including Section 8 tenancies. (See 15 U.S.C. § 9058(c).) Because the enactment postdates the events giving rise to the Section 8 plaintiffs' claims, it does not apply here.

The cases do not stand for that proposition. Each involved a landlord's attempt to terminate a federally subsidized tenancy after providing at least 30 days' notice but without specifying a reason for the termination. (*Anchor Pacifica*, *supra*, 205 Cal.App.4th at p. 238; *Mitchell*, *supra*, 203 Cal.App.3d Supp. at p. 3; *Gallman, supra*, 639 F.Supp. at p. 474.) State law generally permits the termination of a month-to-month tenancy with notice of this kind. (Civ. Code, § 1946.) The cases cited by plaintiffs held that a Section 8 subsidy is a government entitlement and its termination is a government action; thus, pursuant to due process principles, a Section 8 tenancy can only be terminated if the notice specifies good cause for the termination. (*Anchor Pacifica*, at p. 247; *Mitchell*, at p. 3; *Gallman*, at p. 485.) Absent notice specifying good cause, the tenants in *Anchor Pacifica, Mitchell*, and *Gallman* were entitled to judgment in their favor because their tenancies had not been legally terminated. (*Anchor Pacifica*, at pp. 247-248; *Mitchell*, at p. 3; *Gallman*, at p. 485.) These decisions do not require that a 30-day notice be used in all cases where a landlord terminates a Section 8 tenancy; rather, they provide that if a landlord seeks to terminate a Section 8 tenancy, the notice (regardless of its duration) must set forth good cause for the termination.

Because the Section 8 plaintiffs fail to demonstrate that FPI was required to provide them with 30 days' notice before terminating their tenancies for failure to pay rent, the trial court did not err in summarily adjudicating the Section 8 plaintiffs' UCL claim in FPI's favor.

D.    *Appeal from Order Awarding Costs*

Plaintiffs also appeal from the trial court's order awarding costs to FPI.  Costs were awarded incidental to the judgment.  (Code Civ. Proc., § 1032.)  Because we reverse the judgment, the cost order is moot.  (*Evans v. Southern Pacific Transportation Co.* (1989) 213 Cal.App.3d 1378, 1388.)

## DISPOSITION

The judgment and postjudgment order on costs are reversed.  The order denying plaintiffs' motion for summary adjudication is affirmed.  The order granting FPI's motion for summary judgment or summary adjudication is affirmed in part and reversed in part.  The cause is remanded with directions to the trial court to vacate its order granting summary judgment and to enter a new order that denies FPI's motion for summary judgment and grants FPI's motion for summary adjudication only with respect to the Section 8 plaintiffs' UCL claim and plaintiffs' claim for wrongful termination of tenancy.  The parties shall bear their own costs on appeal.


EVENSON, J.*

We concur:


FEUER, Acting P. J.        MARTINEZ, J.

---

*        Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.